Cheryl K. CARLSON, and Dennis
E. Carlson, Plaintiffs,

v.

**FREIGHTLINER LLC, Defendant.**

No. 4:03CV3208.

United States District Court,
D. Nebraska.

Dec. 1, 2004.

David S. Houghton, Robert W. Mullin, William G. Garbina, Lieben, Whitted Law Firm, Omaha, NE, for Plaintiffs.

Dean J. Sitzmann, Melanie J. Whittamore–Mantzios, Stephen L. Ahl, Wolfe, Snowden Law Firm, Lincoln, NE, for Defendant.

## MEMORANDUM AND ORDER

PIESTER, United States Magistrate Judge.

The history of discovery in this case spans two forums and two years. The docket of this case is laden with not only motions for relief but motions to strike the opposing party's responses to motions for relief and has become nearly indecipherable. Since the procedural history, as evidenced by the record herein, is highly relevant to this court's ruling on the motions addressed in this order, the following detailed summary of that history is provided.

## FACTUAL STATEMENT

1. The plaintiffs' claim arises from an October 19, 2000 motor vehicle accident wherein Shirley Carlson ("Carlson") was struck and killed by a truck manufactured by the defendant Freightliner LLC ("Freightliner"), owned by Brandt Excavating Company ("Brandt"), and operated by Shawna Whyrick ("Whyrick"), Brandt's employee. Melissa Holton ("Holton") was also seriously injured in this accident.

2. Defendant's in-house counsel, Brian Burton, ("Burton") has been involved with the investigation, claims processing, and litigation preparation since October 20, 2000, the day after the Carlson accident occurred. Filing 59, ex. 1 (Burton affidavit) at ¶ 7 & 8. In that context, Burton:

- Made notes of conversations, messages, and meetings conducted with Freightliner employees as well as retained counsel.

- Retained claims consultants to assist in the investigation.

- Corresponded with Freightliner's insurer, Allianz Insurance Company, concerning the status of the litigation and the defendant's litigation planning.

- Conducted jury verdict research and, in January 2001, retained an economist to

estimate the potential Holton and Carlson damage awards.

- Secured the services of a mediator and attended the mediation.
- On November 8, 2000 retained Nebraska counsel, Marlon Polk, to represent Freightliner's interests, and corresponded and communicated with him thereafter for that purpose.
- On January 29, 2001 retained Nebraska counsel, Stephen Ahl, to represent Freightliner's interests thereafter in any Nebraska litigation. Mr. Ahl, Dean Sitzman, and Melanie Whittamore–Mantzios, all attorneys in Wolfe, Snowden, Hurd, Luers & Ahl, LLP, are Freightliner's counsel of record in this litigation.
- On January 30, 2001 retained Oregon counsel, the Miller Nash law firm, to represent Freightliner's interests in litigation matters related to the claim of Holton; and separate Oregon counsel, the Rosen Law Firm, to represent its interests on the Holton and Carlson case. Freightliner's representation by the Rosen firm continued until December 2002.
- Was involved in retaining Jeffrey Kilmer, an Oregon attorney, to represent Freightliner in the plaintiffs' Oregon suit filed in October 2002.
- Retained a law professor, Maury Holland, to research and offer legal opinions on the choice of law question on punitive damages.

Filing 59, ex. 1 (Burton affidavit) ¶¶ 9–20.

3. On October 11, 2002 the plaintiffs filed suit against Freightliner in the Circuit Court for the County of Multnomah, Oregon. The plaintiffs also served their First Request for Production of Documents on October 11, 2002. Those discovery requests were strikingly similar to the request now at issue in this litigation. Filing 21, exs. A & C; filing 50, ex. V.

4. On February 14, 2003 the defendant moved to dismiss the case from the Oregon forum on the basis of *forum non conveniens*. The defendant argued that although the defendant's offices were in Oregon, and the engineering on the braking system at issue was performed in Oregon, the accident occurred in Nebraska and the plaintiffs sole motive for filing suit in Oregon was to secure recovery of punitive damages under Oregon law. Filing 21, ex. B. Freightliner claimed the litigation must be pursued in Nebraska so Freightliner could pursue its claims against the truck driver, Whyrick, and her employer, Brandt. Freightliner argued:

> [P]laintiff's jurisdiction-shopping ploy—and that is what this is—leaves Freightliner unfairly exposed to damages potentially higher than it would be if all tortfeasors were joined, as they could be, in Nebraska.

Filing 21, ex. B at p. 15. Mr. Ahl provided an affidavit in support of the motion which advised the Oregon court that based on his review of the intersection, jurors would need to perform a site visit of the accident scene to properly gauge the truck driver's reaction to the brake failure, and her opportunities to mitigate the effects of the accident. Filing 21, ex. B. Freightliner also agreed that if the case were dismissed in Oregon, Freightliner would waive any statute of limitations defense to re-filing the suit in Nebraska.

5. Plaintiffs' response was filed on February 24, 2003. The plaintiff argued that Whyrick and Brandt were not necessary and indispensable parties, and that in the context of a products liability case, many documents must be produced and many Freightliner employees deposed in Oregon concerning the company's engineering and product testing, economic considerations, recall decision, and the braking ability and design of the allegedly defective brakes. They also argued that a site visit would neither be necessary nor even helpful to the jurors' understanding of the design and engineering considerations of plaintiffs' case. They further offered evidence, in the form of a State-of–the–State address by Nebraska Governor Johanns, addressing Nebraska's budgetary concerns and their implications on the court system.

Filing 21, ex. D.

6. On March 4, 2003 the defendant responded to plaintiffs' opposition with additional briefing and affidavits. Counsel for Freightliner argued for litigating the case in Nebraska so that Freightliner could pursue its claim against Whyrick and Brandt. "While Freightliner accepts responsibility for failure of the service braking system, Freightliner contends that driver Whyrick and her employer are also at fault for failure to activate the park brake." Filing 21, ex. E, attached Kilmer affidavit at p. 2 ¶ 5. "Because Freightliner does not contest that it is responsible for the failure of the push rod, it is quite possible that no witnesses will be necessary from Freightliner." Filing 21, ex. E, attached Kilmer affidavit at p. 4–5 ¶ 13. "In this case if Freightliner needs to provide current employee witnesses in Nebraska for deposition and trial at its expense it will do [so]." Filing 21, ex. E, attached Kilmer affidavit at p. 5 ¶ 14.

7. On March 5, 2003 the defendant responded to the plaintiffs' first requests for production of documents. To nearly every request, the defendant stated:

Object. Over broad, burdensome and, in light of Freightliner's admission that the push rod used in the braking system of the truck involved in the incident accident was defective and caused loss of brakes prior to the time of the accident, seeks irrelevant evidence and documents which are not likely to lead to relevant evidence.

Filing 21, ex. C.

8. The March 13, 2003 argument on the motion to dismiss included the following dialogue between Freightliner's counsel and Oregon Circuit Court Judge Henry Kantor:

Counsel: Freightliner has admitted that there is a defect in the braking system because of this pin that—that broke, which resulted in the loss of the brakes and led to this collision.

Court: I read the words in your brief about what it is you are acknowledging. And I want you to be as specific as you possibly can in that because I didn't quite—I note for sure you're admitting that there was a defect.

Counsel: Right.

Court: Whether you're admitting the full extent of the design defect, I couldn't quite tell.

Counsel: No. It was defective in design and—

Court: All right.

Counsel: —it was—or manufacture or something. The thing broke, it shouldn't have broke [sic], and frankly it was not big enough.

Court: Right.

Counsel: And it was not effective to withstand the forces used.

Court: Right. So you are admitting liability?

Counsel: We're admitting that our fault caused the loss of brakes.

Court: Right.

Counsel: And contributed to the accident.

Court: Isn't that essentially admitting liability?

Counsel: You know, yes. Yes, it is essentially admitting some liabilities [sic], not admitting all the liability, and that's the point that I want to make.

Filing 21, ex. F (transcript) at 6:19–8:2.

9. At the close of the argument the Oregon court ruled that the case should be dismissed for *forum non conveniens*. Filing 21, ex. G.

10. The plaintiffs' present suit was filed on June 4, 2003 (filing 1), and their amended complaint was filed on June 26, 2003. Filing 5. In all material respects, the plaintiffs' Oregon complaint and the complaint filed herein are the same. Compare filing 1 and filing 21, Ex. A.

11. Freightliner's answer was filed on July 30, 2003. Filing 6. The answer states:

Both Shawna Whyrick and Brandt Excavating Company, are persons or entities that are or could be liable to the plaintiff

in this case and both Shawna Whyrick and Brandt Excavating Company have entered into a release, covenant not to sue or similar agreement with the plaintiff.

Filing 6 ¶ 20. Whyrick and Brandt are not parties to this suit.

12. The parties conferred by telephone on August 18, 2003 and submitted their joint report of parties' planning conference. In that report the defendant stated it did not anticipate needing to amend its pleadings and, if necessary, it would file the necessary motions by December 15, 2003 or, if needed, thirty days after the plaintiff added any parties, whichever was later. Filing 8.

13. Pursuant to the court's August 25, 2003 progression order, filing 9, the parties were given ninety days, or until November 23, 2003, to file any motions for leave to file amended pleadings. This progression schedule deadline was never amended by the court. A telephonic planning conference was set for November 6, 2003.

14. Mandatory disclosures were exchanged on August 28 and 29, 2003. Filings 10 & 11. Defendant's mandatory disclosures listed Whyrick as a witness and also identified a "Representative of Brandt Excavating" to "testify as to their knowledge of the maintenance and repairs to the Freightliner truck [and] training provided to drivers and hiring practices." Filing 30, ex. L. It identified "records and invoices reflecting maintenance of and repair to the Freightliner truck," and the reports of the National Transportation Safety Board as exhibits.

15. The plaintiffs served Requests for Admissions on the defendant. Plaintiffs' interrogatories and requests for production were served on the defendant on September 10, 2003. Filing 50, ex. M; filing 50, ex. X (Mullin affidavit at ¶ 1).

16. On October 3, 2003, in response to plaintiffs' requests for admission, Freightliner admitted it was "negligent in utilizing a brake pedal push rod which failed," but it was "without sufficient knowledge based upon reasonable inquiry" to state whether or not "a failure of owner/operator inspection and/or maintenance requirements" was a cause of the fractured brake pedal push rod. Filing 108, ex. 3, sub. ex 3–B, Defendant's responses to Requests for Admissions 3 & 8.

17. Defendant's answers to interrogatories and requests for production of documents were due on October 13, 2003. However, at defendant's request, plaintiffs' counsel granted the defendant a two-week extension, or until October 27, 2003, to respond. Filing 30, Ex. J; filing 50, ex. X (Mullin affidavit at ¶ 2).

18. Defendant's answers and objections to interrogatories were served on October 30, 2003. Defendant's responses consisted of few facts and many objections. Filing 21, ex. I; filing 50, ex. X (Mullin affidavit at ¶ 3).

19. On November 3, 2003 plaintiffs' counsel sent a letter to Freightliner's counsel expressing his disappointment with defendant's lack of disclosure in its discovery responses despite affording the defendant a two-week extension. Filing 30, ex. K; filing 50, ex. X (Mullin affidavit at ¶ 4). The plaintiffs' detailed listing of demands for discovery included the following:

### INTERROGATORY NO. 15

Your refusal to specify all facts for the various allegations of Whyrick's negligence is unacceptable. We are looking for facts, not mental impression, conclusions, opinions or legal theories.

### INTERROGATORY NO. 16

Your refusal to specify facts upon which you base separate allegations of negligence on the part of Brandt is unacceptable. Again, we are looking for facts.

Filing 30, Ex. K.

20. Counsel for the plaintiffs and defendant conferred by phone on November 5, 2003 to resolve the discovery dispute,

but were unsuccessful. Filing 28, ¶ 6; filing 50, ex. X (Mullin affidavit at ¶ 5).

21. During a November 6, 2003 telephonic planning conference with the undersigned, the parties explained that discovery disputes were ongoing, in part because they disagreed as to the scope of permissible discovery in light of Freightliner's admission of negligence and its contention that Oregon punitive damage law was inapplicable to the case. The parties were ordered to confer and attempt to resolve the discovery disputes, file a motion to compel as soon as possible if no resolution was reached, and promptly file an appropriate motion for determination on the choice of law issues. See filing 16. Counsel for the parties conferred that day by telephone to resolve the discovery dispute, but were unable to do so. Filing 28, ¶ 7; filing 50, ex. X (Mullin affidavit at ¶ 6).

22. Freightliner's amended answer was filed on November 25, 2003. Like the answer previously filed, the amended answer alleged that while Freightliner was negligent, the negligence of Whyrick and Brandt were also proximate causes of the accident. Freightliner seeks a judgment which allocates the negligence and, in turn, its proportionate share of any damages owed to the plaintiffs. Filing 17.

23. Citing extensively to the Oregon court's records, on December 3, 2003 the plaintiffs filed a Motion to Take Judicial Notice of Adjudicative Facts, filing 18, and a Motion to Deem Facts Judicially Admitted, filing 19. These motions were denied by the district judge on December 9, 2003 because the court "declines to consider Plaintiffs' naked requests for pretrial findings." Filing 23.

24. Counsel for the plaintiff and defendant conferred on December 15 and 17, 2003 in an attempt to resolve the discovery gridlock, but were unable to reach a resolution. Filing 28 ¶ 7; filing 50, ex. X (Mullin affidavit at ¶ 6).

25. On December 22, 2003:

● I entered an order giving plaintiffs until December 29, 2003 (later extended to December 31, 2003) to file their motion to compel discovery and their motion to determine choice of law. Filings 24 & 26.

● Counsel for the parties again conferred to resolve the discovery dispute to no avail. They also discussed defendant's failure to serve any responses to Plaintiffs' First Request For Production Of Documents, and the parties agreed that the time for defendant's response to those requests would be extended to a date set by the court after ruling on plaintiffs' motion to compel. Filing 28 ¶¶ 7–8; filing 50, ex. X (Mullin affidavit at ¶ 6); filing 59, ex. 3(Ahl affidavit) ¶ 7.

26. The plaintiffs' motion to compel was timely filed on December 31, 2003. Filing 28. The motion requested the court to deem admitted the entirety of Request for Admission No. 3 for failure to fully respond. Request number 3 stated:

REQUEST FOR ADMISSION NO. 3: Admit that Freightliner was negligent in utilizing a brake pedal push rod which failed to withstand reasonable and foreseeable use.

RESPONSE: Freightliner admits that they were negligent in utilizing a brake pedal push rod which failed.

Plaintiffs' motion to compel also requested an order requiring the defendant to fully respond to the vast majority of plaintiffs' interrogatories, including those requesting defendant's factual basis for claiming the actions of Whyrick and Brandt were a proximate cause of this accident. The motion to compel did not address plaintiffs' requests for production of documents.

27. The defendant did not respond to the motion to compel.

28. On January 26, 2004 the defendant responded to the plaintiffs' First Request for Production of Documents. As to each request, the defendant stated:

Defendant objects for the reason that the information sought is not relevant, will not likely lead to the discovery of

admissible evidence nor to the discovery of information which in turn will lead to the development of relevant and admissible information.

Filing 50, ex. N. This objection raised the same theory advanced by the defendant in objecting to plaintiffs' interrogatories. No privilege objections were raised as to any of the requested document production requests. Filing 50, ex. X (Mullin affidavit at ¶ 8, 16) and filing 59, ex. 3 (Ahl affidavit) ¶ 6 & 8.

29. On March 19, 2004 I issued an order granting plaintiffs' motion to compel in all respects. The order allowed plaintiffs' counsel to request an award of attorney's fees incurred in filing the motion. Filing 35.

30. On April 14, 2004 the defendant's appeal of the filing 35 order was denied. Filings 36 & 43.

31. On April 16, 2004 counsel discussed the pending discovery matters. Defendant's counsel agreed to answer the written discovery on or before May 4, 2004, to be followed by depositions of defendant's Oregon witnesses during the ninety days after the written discovery was supplied. In exchange for an assurance that this schedule would be followed, plaintiffs' counsel agreed not to request his attorney's fees for bringing the motion to compel. Plaintiffs' counsel advised the undersigned on April 21, 2004 that he would not pursue an award of attorney's fees for filing the motion to compel. Filing 50, ex. O & ex. X (Mullin affidavit) at ¶ 9.

32. On May 4, 2004 the office of defendant's counsel requested a few more days to respond to the discovery requests and agreed to "serve what [it] had" by May 10, 2004. Filing 50, ex. X (Mullin affidavit) at ¶ 10.

33. On May 10, 2004:
  - An amended order setting the progression schedule was entered. The deposition deadline was set for August 31, 2004, a pretrial conference scheduled for September 14, 2004, and trial was set for October 4, 2004. No new dates for amending pleadings were requested or set. Filing 44.
  - The defendant served supplemental responses to plaintiffs' interrogatories, but failed to respond to interrogatories 4, 5, 15, and 16, and failed to respond the any of the document production requests. Filing 50, ex. P & ex. X (Mullin affidavit) at ¶ 11.

34. On May 11, 2004 counsel for the plaintiff conferred with defendant's counsel and asked about the failure to respond to plaintiffs' requests for production of documents. Defendant's counsel responded that "there is no order compelling discovery of Plaintiffs' first request for production of documents," but he acknowledged his prior agreement to do so. He requested, and plaintiffs' counsel granted an additional two weeks to provide the documents. Filing 50, ex. X (Mullin affidavit) at ¶ 12. On the pending motion to compel document discovery, defendant's counsel points out that "Prior to June 30, 2004, the Plaintiffs have not filed a motion to compel in regard to the Request for Production of Documents [.] Nor has there been an Order to Compel issued by the Court in association with the Plaintiffs' Request for Production of Documents." Filing 59, ex. 3 (Ahl affidavit) ¶ 9.

35. As of June 1, 2004 the defendant had not provided complete responses to Plaintiffs' Requests for Production of Documents. Counsel for the defendant agreed to deliver to plaintiffs' counsel its completed and categorized document production discovery by June 4, 2004, and if unable to accomplish that, a partial production with a catalog of the documents remaining to be produced, and complete document production by June 11, 2004. Filing 50, exs. Q, R & X (Mullin affidavit) at ¶ 13.

36. On June 7, 2004 plaintiffs' counsel received two boxes of documents from the defendant which were identified as responding to Request for Production Nos. 1 and 2 only. There was no response to Requests for Production Nos. 3 through 19. The documents were

loosely organized under only four tabs. The response to Request for Production No. 2 stated, "[s]ee enclosed drawings." The response to Request for Production No. 1 stated:

See enclosed documents. The defendant is withholding some documents that are responsive to this request based upon work product privilege, trade secret, and self-critical analysis and will provide the Plaintiff with a privilege log.

Filing 50, ex. S. The privilege log was not produced.

Filing 50, ex. X (Mullin affidavit) at ¶ 14 and sub-ex. 1; filing 59, ex. 3 (Ahl affidavit) ¶ 11.

37. On June 8, 2004 plaintiffs' counsel spoke with defendant's counsel regarding defendant's failure to respond to Requests for Production Nos. 3 through 19, and its failure to comply with this court's prior order to answer Interrogatories 4 and 5. The first conversation was with Ms. Whittamore–Mantzios, who stated that all the documents in the possession of defense counsel's office had been produced and stated "I just don't have an answer for you" with respect to Requests for Production Nos. 3 through 19. Shortly thereafter, plaintiffs' counsel contacted Mr. Ahl regarding the failure to fully respond to discovery. Plaintiffs' counsel asked when the balance of the materials would be produced and was told they were being compiled, they were doing their best but did not know when the balance of the documents would be available, and plaintiffs' counsel would be advised at the end of that day as to when they could realistically expect to receive the documents. Defendant's counsel was "politely told that that was unacceptable," and a motion to compel would be filed. Defense counsel stated that if plaintiffs' counsel believed the defendant's attempts to comply were insufficient, then "go ahead and file your motion." As to the incomplete interrogatory responses, the letter from plaintiffs' counsel confirming the conversation warned of their "intention to seek another order from the court and to ask for sanctions." Defendant's counsel took exception to the tone of the continuing discovery battle and demanded that all further communications on the discovery issues be in writing. He did not advise plaintiffs' counsel that day as to when the documents responsive to the production requests would be provided. Filing 50, exs. T, U, V & X (Mullin affidavit) at ¶ 15.

38. On June 14, 2004 the defendant filed a Second Supplemental Response to Plaintiffs' First Request for Production of Documents. This response listed additional documents provided in response to Request for Production No. 1, and provided an attached privilege log. Filing 50, ex. W & ex. X (Mullin affidavit) at ¶ 16.

39. On June 30, 2004 plaintiff filed the pending motion to compel and request for Rule 37 sanctions, (filing 48) and a motion to extend their expert disclosure deadline to thirty days after the defendant properly responded to Interrogatories 4 and 5 and plaintiffs' document production requests. Filing 51.

40. On July 7 and 8, 2004 the plaintiffs served 30(b)(6) deposition notices to take depositions of defendant's design and testing engineers, technicians, and persons involved in recalling the defective part at issue in this lawsuit. Filing 112, Mullin affidavit at ¶ 3 and sub-exs. Y & Z. See also filings 53 and 54. The depositions were noticed to be taken in Nebraska because, in support of its argument that the plaintiffs would not be prejudiced if the case were dismissed from an Oregon forum for re-filing in Nebraska, the defendant had assured the Oregon court that its witnesses would be produced in Nebraska at the defendants's expense. Filing 112, Mullin affidavit at ¶ 4; filing 21, ex. F (Oregon transcript) at 10:9–25.

41. On July 8, 2004 plaintiffs' counsel spoke with Mr. Ahl who stated that July 15 was not an available deposition date but he would provide alternative dates in a few days. As of July 13, 2004 no alter-

native dates had been offered. Mr. Ahl was reminded that plaintiffs' depositions remained noticed for July 15 and in response, counsel again conferred and agreed to take the 30(b)(6) depositions in defense counsel's Lincoln, Nebraska offices. Amended 30(b)(6) deposition notices were filed. Filing 112, Mullin affidavit at ¶ 5 and sub-exs. AA & BB; filing 57.

42. On July 15, 2004:

- Burton (Freightliner's in-house counsel) acknowledged that he has been involved in answering plaintiffs' interrogatories 4 and 5, and the "print out that we will provide to the Plaintiffs is the best that we can do to be responsive to the Plaintiffs' Interrogatory [sic] without spending a great deal of time researching files that go back ten years...." Filing 59, ex. 1 (Burton affidavit) ¶ 22 (emphasis added).

- Freightliner provided supplemental answers to interrogatories as follows:

  — As to Interrogatory No. 4, identified four parts and the numbers replaced, further stating that it was "presently attempting to assemble the information necessary to respond to this interrogatory and will supplement this answer when it is available."

  — As to Interrogatory No. 5, attached a spreadsheet with information.

  — As to Interrogatory No. 16, which requested the defendant to set forth with specificity the facts relied on for the allegations in paragraph 19 of its Amended Answer, Freightliner responded: "The facts relied on by Freightliner for the allegation contained in paragraph 19 include the acts and omissions of their employee and how that reflects upon their practices. **Also, see attached**

records regarding **Brandt Excavating Company**."

Filing 59, ex. 5 (emphasis in original).

- Freightliner served its Third Supplemental Response to Plaintiffs' First Request for Production of Documents. This response:

  — supplemented Request for Production No. 1;

  — promised further responses in the future with regard to Request for Production Nos. 2, 3, 4, and 8; [1]

  — listed documents produced, and their bates-stamp identification, responsive to Request for Production Nos. 5, 6, 7, 9, 10, 11, 16, 17 and 19; and,

  — continued to object on relevancy grounds to Request for Production Nos. 11, 12, 14, 15 and 18.

Filing 59, ex. 4.

- Counsel for Freightliner advised plaintiffs' counsel that Anthony Moore would be a designated witness for the defendant on the design and testing categories of the 30(b)(6) notice, but he could not be deposed until August 4; and that a person named Rossow (originally understood by plaintiffs to be Rousseau) would respond to the product recall and recall committee issues, but his availability for an August 4 deposition was uncertain. Filing 112, Mullin affidavit at ¶ 6.

43. On July 19, 2004 plaintiffs' counsel asked for a specific date to take the Rossow deposition and was told the parties could discuss that at the August 4, 2004 Moore deposition. Plaintiffs' counsel objected to this delay and demanded a date and time for taking Rossow's 30(b)(6) deposition. Filing 112, Mullin affidavit at ¶ 7 and sub-ex. CC.

44. On July 29, 2004 the defendant filed and served a notice to take the deposition of

---

1. Freightliner's responses are as follows:
   Request for Production No. 2:
   Freightliner will attempt to supplement this response as soon as possible to investigate if any additional drawings or documents exist that are responsive to this request.
   Request for Production Nos. 3 and 4:
   Freightliner will attempt to respond to this request as soon as possible.
   Request for Production No. 8:
   There were depositions taken in April and May 2004, in a California case that will be provided to Plaintiffs upon receipt by defense counsel of the same.

Whyrick and a Rule 30(b)(6) notice to take the deposition of Brandt. Filings 62 & 63. Amended notices were filed on August 2, 2004, (see filings 70, 71, 72 & 73), and August 17, 2004 (filing 97).

45. On July 30, 2004 the plaintiff filed motions to take judicial notice of adjudicative facts, to deem facts judicially admitted, and for a summary judgment finding the defendant strictly liable for Shirley Carlson's death; finding any negligence by Brandt or Wryrick was not the sole proximate cause of the accident; and ruling that Nebraska's comparative fault statutes are not applicable to a strict liability claim. Filings 65, 67, 68.

46. On August 2, 2004:

   - The plaintiffs again demanded, in writing, an available date and time for taking the 30(b)(6) deposition on itemized topics to be addressed by Freightliner witnesses other than Anthony Moore. Filing 112, Mullin affidavit at ¶ 8 and sub-ex. DD. The defendant did not respond to this repeated demand for a deposition date and time, but did file:

     — A motion for partial summary judgment seeking a ruling that Nebraska law applies to plaintiffs' prayer for damages and precludes the plaintiffs' claim for punitive damages (filing 75);

     — A motion to withdraw its January 23, 2004 statement (found in its filing 31 brief in opposition to plaintiffs' motion to determine choice of law) that the truck at issue was designed in Oregon and manufactured in North Carolina, and in essence replace it with a statement that the truck was designed and manufactured in North Carolina (filing 79). This motion is supported by the affidavit of Nasser Samani dated July 1, 2004; an unsigned affidavit of Burton (the subject of its motion for leave to file an unsigned affidavit and motion to file a substitute affidavit (filings 82 & 87)); and defendant's affirmative statement that plaintiffs' discovery

never asked where the truck was manufactured. See filing 81, exs. 1 (Burton unsigned affidavit), 2 (Samani affidavit), and 3 (Whittamore–Mantzios affidavit).

47. At the August 4, 2004 deposition of Anthony Moore:

   - Defense counsel stated that Rossow was out of the country and not available to be deposed until on or after September 15, 2004. (The underlying 30(b)(6) deposition notice was originally filed on July 7, 2004). This statement was confirmed by letter dated August 6, 2004. Defendant's August 6, 2004 letter also requested available dates and times for taking the deposition of plaintiffs' testifying expert. Filing 112, Mullin affidavit at ¶ 8 and sub. exs. DD & EE. The deposition of Rossow was scheduled for September 15, 2004. Filing 112, Mullin affidavit at ¶ 10.

   - Anthony Moore testified on the issue of design engineering and testing of the brake system and push rod at issue, and referred to two test reports (one from 1992 and one from 2000), which discussed the allegedly defective part at issue in this litigation. Counsel for defendant refused to produce these reports in the absence of a protective order to preserve the confidentiality of the reports. Filing 112, Mullin affidavit at ¶ 9; filing 108, sub-ex. C at 58:8–68:1. The defendants had never previously requested such an order in this litigation.

48. The defendant filed its objection to plaintiffs' Rule 30(b)(6) notice of deposition as follows:

   Defendant objects generally to the pleading for the reasons that the provisions are overly broad, vague and ambiguous, unlimited in scope, they seek legal conclusions, they seek attorney work product and/or attorney client privilege information, they are not reasonably specific as contemplated by Rule 30(b)(6), they seek information which is neither relevant nor reasonably calculated to lead to admissible evidence. Without waiving any of the foregoing objections, the Defendant states

that it designates Gary Rossow to testify regarding recall matters and Anthony Moore to testify regarding design engineering and test engineering for the brake system and push rod matters. Filing 123.

49. On August 13, 2004 I ordered the defendant to submit for *in camera* review its revised privilege log and all the documents identified in that log, and I ordered the defendant or its counsel to provide a statement, under oath, explaining the absence of one hundred forty-one pages of documents responsive to the defendant's discovery requests. I further ordered the plaintiffs to advise the court if they had received all the documents identified as produced in the defendant's responses to document production requests. Filing 94. The parties timely provided this information to the court on August 20, 2004.

50. On August 17, 2004 the plaintiff moved to stay the progression of the case in light of the ongoing discovery disputes; and the fact that without defendant's discovery responses, it cannot secure a thorough expert analysis of the truck's mechanical failures and the cause of the accident and cannot fully respond to the defendant's accident reconstruction expert. This motion was granted, and progression deadlines were stayed pending further order of the court. This order did not extend the November 23, 2003 deadline for filing amended pleadings. Filings 98, 99 & 100.

51. On August 18, 2004 defense counsel sent to plaintiffs' counsel a proposed "Stipulation for Protective Order" which identified the 1992 and 2000 test reports and several other drawings as documents to be considered confidential, not used for any purpose other than the pending litigation, and "not disclosed by Plaintiffs' counsel to any other person." Filing 112, Ex. GG. This joint stipulation and request for a protective order has not been filed with the court.

52. On August 19, 2004 the defendant filed a motion to amend its amended answer to raise the defense of misuse (filing 102) and a motion to withdraw the deemed admission on Request for Admission No. 3 (see filing 104 order). It also filed its response to the plaintiffs' motion for summary judgment (filing 107). One index of evidence was submitted in support of all three of these filings. See filing 108.

53. On August 20, 2004 the plaintiffs requested a continuance for responding to defendant's motion for partial summary judgment to permit additional discovery, and submitted a brief opposing the defendant's summary judgment motion. Filing 113.

54. On August 26, 2004 the plaintiffs filed a reply brief in response to the defendant's August 19, 2004 brief opposing plaintiffs' motion for summary judgment. The next day defendant moved to strike the reply brief, arguing the plaintiffs failed to obtain the necessary leave of court to file a reply. Filing 116.

55. On September 10, 2004 the defendant:

- Filed an objection to plaintiffs' third amended 30(b)(6) notice of deposition. The amended notice was substantially the same as the original July 7, 2004 except that the date and time of the depositions were changed to accommodate the defendant's schedule. The September 10, 2004 objection is substantially the same as the objection that was filed on August 6, 2004. Filing 123.

- Moved to strike as untimely the plaintiffs' September 3, 2004 response to the defendant's August 19, 2004 motion. Filing 124.

56. On November 15, 2004 the parties submitted a joint stipulation for a protective order as to some of the documents at issue on the Request for Production of Documents. The corresponding protective order was entered on November 17, 2004. See filings 134 & 136.

## ANALYSIS

Of the numerous motions pending in this case, this order addresses:

- Plaintiffs' second motion to compel and its request for Rule 37 sanctions (filing 48);

- Plaintiffs' motion to enlarge the time for disclosing expert witnesses (filing 51);

- Defendant's motion to amend the amended answer (filing 102);

- Defendant's motion to withdraw and amend the deemed admission regarding the prior order on plaintiffs' motion to compel (filing 104);

- Defendant's motion to strike filings 117 and 118 (filing 124).

### Defendant's Filing 124 Motion to Strike

Since the permissible scope of discovery is defined by the issues raised in the pleadings, I must initially address the defendant's motion to amend its amended answer, filing 102. To address that motion, I must first decide what matters are properly before the court for consideration.

The defendant has filed a motion to strike the plaintiffs' brief and index of evidence (filings 117 and 118) in opposition to the defendant's Motion to Withdraw Admission and Amend Admission (filing 104), and Motion to Amend the Amended Answer. Filing 102. The defendant claims plaintiffs' response was untimely filed.

Under the circumstances presented in this case, where the defendant has failed to timely respond to discovery, is now moving to withdraw deemed admissions and express admissions, and untimely moving to amend pleadings, its staunch position on plaintiffs' alleged delay is puzzling to say the least. Assuming its position had merit, Freightliner certainly would not fare well in this court if it were judged by the standard it seeks to impose on the plaintiffs.

■ More importantly, the plaintiffs' response was timely. The filing 102 and 104 motions were filed on August 19, 2004 and served on the plaintiffs through the court's electronic case filing system (ECF). Under the Federal Rules of Civil Procedure, when the deadline for responding to a motion is ten days and the motion is served electronically, three days are added to allow for service, and

the ten days counted do not include weekends or holidays. See Fed. R. Civ. P 5(b)(2)(D), 6(a) and 6(e). See also NECivR 6.1(b).

Therefore, defendant's motions filed electronically on August 19, 2004 were not considered served on the plaintiffs until August 22, 2004, and excluding weekend days, the ten-day response deadline was no earlier than September 3, 2004. The plaintiffs' response was timely filed that day. Defendant's filing 124 motion to strike plaintiffs' filings 117 and 118 must be denied.

### Motion to Amend the Amended Answer (filing 102)

The defendant seeks to raise the affirmative defense of "misuse" to plaintiffs' strict liability claim. Filing 102. The plaintiffs' primary response to Freightliner's motion to amend is that the proposed "misuse" defense runs contrary to the representations Freightliner made to the Oregon court while arguing for dismissal of the Oregon case for *forum non conveniens*. In essence the plaintiff claims Freightliner made admissions against its interests to successfully forum-shop its way from an Oregon court to a Nebraska court, and is now back-tracking from those admissions to avoid being held strictly liable in Nebraska. The plaintiff also claims "misuse" by a third party is not a defense to plaintiffs' strict liability claim; there is no reasonable excuse for Freightliner raising the "misuse" defense now when this case began in Oregon nearly two years ago; the merits of the defense are weak under the facts; and the defendant's attempts to thwart plaintiffs' discovery have resulted in delay which, in light of the changing landscape of this case, prejudices the plaintiffs' ability to reach a prompt and fair resolution. See filing 106, plaintiffs' brief opposing motion to amend.

■ Freightliner's motion to amend is untimely. The August 25, 2003 progression order, filing 9, set a November 23, 2003 deadline for filing any amended pleadings. When a party seeks a late amendment to its pleadings after the time for doing so established by a pretrial order has passed, the court must consider the reasons for the non-

compliance; the seriousness of the claim or defense sought to be added; the prejudice, if any, to the opposing parties; and whether that prejudice can be reduced or eliminated by granting a continuance in the case. *Popp Telcom v. American Sharecom, Inc.*, 210 F.3d 928, 943 (8th Cir.2000). The court is not to adhere to a scheduling order only for the sake of enforcement when doing so will not further the interests of justice and the interest in having the dispute decided on its merits. *Krispin v. May Dept. Stores Co.*, 218 F.3d 919, 924 (8th Cir.2000).

In this case the defendant seeks to add the affirmative defense of "misuse." *United States v. Big D Enterprises, Inc.*, 184 F.3d 924, 935 (8th Cir.1999). The defendant claims it recently discovered during the deposition of Whyrick, the driver of the truck that struck and killed Shirley Carlson, that the truck was used "off-road" twenty-five percent of the time rather than ten percent of the time. Filing 108, ex. 3, sub. ex 3–A, Whyrick depo. at 4–5. It claims that when the truck was sold, Brandt represented the truck would be used off-road only ten percent of the time, and had it known the truck would be used off-road twenty-five percent of the time, it would have sold Brandt a truck with heavier brakes. Filing 108, ex. 1 (Anthony Patrick Moore affidavit). Freightliner also claims it discovered during Whyrick's deposition that Whyrick failed to perform appropriate pre-use inspections of the truck.

Assuming either of the above claims could establish a misuse defense, Freightliner has offered no explanation for waiting so long to discover the factual basis for this defense; that is, for waiting until August of 2004 to take Whyrick's deposition. In March of 2003 Freightliner was strenuously arguing before an Oregon court that the actions and inactions of Whyrick and Brandt were proximate causes of this accident and therefore Carlson's case needed to be filed in Nebraska so fact witnesses, including Whyrick, could be subpoenaed for deposition and trial. Based substantially on this argument, Freightliner successfully obtained a dismissal in Oregon. The plaintiffs promptly re-filed in Nebraska in June 2003.

For reasons directly related to defendants' obstructionist conduct in responding to discovery, as more fully outlined above and discussed below, the November 6, 2003 planning conference consisted of discussing ongoing discovery disputes rather than accomplishing its purpose—setting progression deadlines including deposition deadlines. Ultimately, the order setting the deposition deadline for this case was not entered until May 6, 2004. Even then, Freightliner waited over three months, until August 11, 2004, to depose Whyrick. Had Freightliner been more interested in reaching the merits of this case, and less focused on withholding information, it could have deposed Whyrick before the November 23, 2003 deadline to amend its answer. Simply stated, Freightliner's conduct cannot provide a valid reason for not complying with this court's November 23, 2003 deadline for filing motions to amend pleadings, and it has offered no reasonable explanation for not taking Whyrick's deposition until August 11, 2004.

■ Freightliner seeks to raise a "misuse" defense, claiming Brandt ordered a truck for ten percent rather than twenty-five percent off-road use, that a truck designed for twenty-five percent off-road use would have heavier brakes, and that Brandt and its driver, Whyrick, failed to inspect the brakes. "In the law of products liability, misuse is use of a product in a way not reasonably foreseeable by the supplier or manufacturer..." *Rahmig v. Mosley Machinery Co.*, 226 Neb. 423, 450, 412 N.W.2d 56, 74 (1987) (citing *Heil Co. v. Grant*, 534 S.W.2d 916 (Tex.Civ. App.1976)). As applied in a products liability case, a product is not "misused" merely because the supplier intended that it be used in a different manner; the supplier "must show that the use which caused the injury was not reasonably foreseeable." *Heil*, 534 S.W.2d at 923. When a design defect and product misuse are both proximate causes of an accident, "misuse cannot constitute a supervening cause if the misuse was foreseeable.... This is true even if the act alleged to be a supervening cause is the negligence of a third party." *Laney v. Coleman Co., Inc.*, 758 F.2d 1299, 1305 (8th Cir.1985) (applying Missouri law). "Even misuse may be foreseeable." *Laney*, 758 F.2d at 1302 (quoting

*Rogers v. Toro Manufacturing Co.*, 522 S.W.2d 632, 638 (Mo.App.1975)).

■ "[B]oth misuse by a plaintiff, the more usual case, and misuse by a third party can defeat a strict liability action. This is so where it is found that it was such misuse of the product, *and not any dangerous condition of the product,* which caused the injuries to a plaintiff." *McCormick v. Bucyrus–Erie Co.*, 81 Ill.App.3d 154, 162, 400 N.E.2d 1009, 1014–15, 36 Ill.Dec. 429, 435 (1980) (emphasis added). "[I]f the (as distinguished from a) proximate cause of injury stems from the injured party's [or third party's] conduct, such as misuse of the product, then recovery is barred." *Silisky v. Midland–Ross Corp.*, 97 Mich.App. 470, 479, 296 N.W.2d 576, 580–81 (1980) (where plaintiff's death was caused by a combination of his misuse of an extension plug and defective plug design, and the danger encountered was not obvious and apparent, decedent's possible misuse of the defectively designed plug could not bar recovery).

> If the failure of a manufacturer to provide a product reasonably fit for the use intended or reasonably foreseen is found to be the proximate cause of the injury to the plaintiff, the fact that plaintiff's misuse concurred with the defect to cause the harm will not bar recovery under a theory of implied warranty unless it can be said that the plaintiff voluntarily and unreasonably proceeded to encounter a known risk.

Am. L. Prod. Liab.3d § 28:62 (relying on *Silisky,* supra). Simply stated, to bar plaintiffs' strict liability claim, Brandt's alleged "misuse" must, by its supervening nature, be deemed *the* cause of the accident.

Freightliner's proposed misuse defense in this forum contradicts its statements in the Oregon forum. To secure a dismissal of the Oregon case, Freightliner's counsel admitted there was a defect in the braking system of the Freightliner truck due to a broken pin; that the broken pin resulted in the loss of brakes that led to the collision which killed Shirley Carlson; and that the brakes were defectively designed and manufactured with brake pins that were too small to withstand the forces used. Freightliner admitted that its "fault caused the loss of brakes," which "contributed to the accident," and it admitted "some liabilit[y]," but not "all the liability" for the accident. Filing 21, ex. F (transcript) at 6:19–8:2.

■ The plaintiffs argue that this admission by Freightliner in the Oregon proceeding cannot be contradicted in this action. Plaintiffs are correct. "The doctrine of judicial estoppel prevents a party from taking a position during litigation which is contrary to one taken in a prior judicial or quasi-judicial proceeding. The underlying purpose is to protect the judicial process." *Amtrust Inc. v. Larson,* 388 F.3d 594, 600–01 (8th Cir. 2004). Judicial estoppel bars inconsistent statements if the prior statements were adopted by a court, made in a judicial proceeding, or made in the same or related litigation. *Id.* In this case Freightliner's admission of at least partial liability for the accident was made in a prior judicial proceeding for the same litigation. This admission may have preserved its right to pursue a claim for allocating the fault of Freightliner, Brandt, and Whyrick as alleged in Freightliner's answer, but Freightliner's admission of partial liability defeats any argument that Brandt's alleged "misuse" of the truck was *the* cause of the accident. Since Freightliner's misuse defense is inconsistent with the position it advanced in the Oregon litigation, it will not be permitted to raise the defense in this forum.

Moreover, even if the defendant is arguing that a misuse defense can be raised when the manufacturer has admitted partial liability for the accident, it cannot be used as a defense to these plaintiffs' claims. The plaintiffs' suit is against only Freightliner. The plaintiff is entitled to recover from Freightliner if Freightliner is found even partially liable. Assuming allocation of fault is an available remedy if Freightliner proves third party misuse, that allocation does not exist between Freightliner's strict liability and the plaintiffs' misuse, but rather between Freightliner's liability and Brandt's and Whyrick's alleged "misuse." The defendant's answer has already raised the issue of Brandt and Whyrick's alleged fault in causing this accident, and prays for a jury determination allocating the relative fault of

Freightliner, Brandt, and Whyrick. Adding it as an affirmative defense to the plaintiffs' claim is unnecessary to preserve the issue for litigation.

To summarize, "misuse" is an available defense to a product liability case when a plaintiffs' or third party's misuse of the product is the sole cause of an accident. This defense therefore contradicts Freightliner's admission of partial liability made to the Oregon court; Freightliner is bound by that admission against interest; and the misuse defense cannot be raised in this action. Moreover, even if a misuse defense raises a claim for allocation of fault between alleged tortfeasors, no claim has or can be raised that the plaintiffs herein were a cause of this accident, and any allocation among Freightliner, Brandt, and Whyrick has already been raised. To the extent Freightliner is prejudiced by being unable to raise a misuse defense, that prejudice was of its own making.

Accordingly, I conclude that Freightliner's untimely motion to amend its answer should be denied.

*Motion to Withdraw and Amend Admission (filing 104)*

Freightliner's answer includes a claim for allocation of fault for this collision as between Brandt, Whyrick, and Freightliner pursuant to Neb.Rev.Stat. § 25–21,185.09. The plaintiffs' Request for Admission 3 and defendant's response were as follows:

> REQUEST FOR ADMISSION NO. 3: Admit that Freightliner was negligent in utilizing a brake pedal push rod which failed to withstand reasonable and foreseeable use.
>
> RESPONSE: Freightliner admits that they were negligent in utilizing a brake pedal push rod which failed.

The plaintiffs moved to have the entirety of Request for Admission 3 deemed admitted. Filing 28. The defendant never responded to that motion. I held that since the defendant did not object to the request, deny the portion of the request that was not addressed by its response, or state that it could not in good faith either admit or deny that portion of the request, the request was deemed admitted. Filing 35. The defendant appealed the portion of the filing 35 order which compelled interrogatory responses, but it did not appeal the ruling on the deemed admission. Filings 36 & 37.

Freightliner now seeks to withdraw the deemed admission by raising the same argument it advanced on the motion to amend its answer; that until it took the deposition of Whyrick on August 11, 2004, it was not aware that the truck was not properly inspected before use, or that it was used off-road twenty-five percent of the time when it was designed for only ten percent off-road use. It claims the deemed admission must be withdrawn to afford a decision on the merits concerning whether the brake pedal push rod failed to withstand reasonable and foreseeable use.

Federal Rule of Civil Procedure 36(b) states:

> [T]he court may permit withdrawal or amendment when the presentation of the merits of the action will be subserved thereby and the party who obtained the admission fails to satisfy the court that withdrawal or amendment will prejudice that party in maintaining the action or defense on the merits.

In determining whether grant a motion to withdraw an admission, the court must consider: 1) whether the moving party has proved that the deemed admission effectively denies a determination of the case on the merits; and 2) whether the nonmoving party has proved it will be prejudiced by "the sudden need to obtain evidence required to prove the matter that had been admitted." *Gutting v. Falstaff Brewing Corp.*, 710 F.2d 1309, 1314 (8th Cir.1983). Rule 36(b) is intended to balance the importance of having an action resolved on the merits against the need to assure that parties who justifiably rely on an admission in planning trial preparation are not thereby prejudiced by a later withdrawal of the admission. See *Gutting*, 710 F.2d at 1314. See also *Manatt v. Union Pacific R. Co.*, 122 F.3d 514, 517 (8th Cir. 1997). The decision ultimately rests within the trial court's discretion: Rule 36(b) states that the court "may allow" withdrawal of a deemed admission. The court has "the pow-

er to prevent abuse and impose sanctions" for failure to timely respond to discovery, including refusing to allow withdrawal of an admission. *Falstaff Brewing Corp.*, 710 F.2d 1309, 1314 (8th Cir.1983) (citing *Asea, Inc. v. Southern Pacific Transportation Co.*, 669 F.2d 1242, 1247 (9th Cir.1981)).

■ According to Freightliner, based on Whyrick's August 11, 2004 deposition, "[t]he evidence now establishes that the admission that Freightliner was negligent in utilizing a brake pedal push rod that failed to withstand reasonable and foreseeable use is not a true characterization of the facts of this case." Filing 105 at 4. Freightliner relies on Whyrick's testimony that a pre-trip inspection of the brake pedal push rod was not performed, and that during the time she drove the truck, it was driven off-road twenty-five percent of the time.

The record does not sufficiently support Freightliner's argument for withdrawing the deemed admission based on these two deposition statements. With reference to its claim that the lack of pre-trip inspections was an unforeseeable cause of the accident, I note that according to Anthony Moore, a 30(b)(6) designee for Freightliner, there are several hundred parts to a truck braking system, (filing 108, ex. 3, sub. ex 3–C, A. Moore depo. at 44–45), and after the Carlson accident, recall notices were sent to truck owners and operators recalling the five-sixteenths-inch push rod. The five-sixteenths-inch push rod was replaced by a seven-sixteenths-inch push rod that threads into a clevis and attaches to the brake pedal with a pin. Filing 108, ex. 3, sub. ex 3–C, A. Moore depo. at 131–134, 140–141. Anthony Moore confirmed that part number 680 996 02 20, an "FLN Brake Pedal Push Rod," describes the push rod at issue in this litigation. Filing 108, ex. 3, sub. ex 3–C, A. Moore depo. at 148–150.

Under Freightliner's driver's manual for business class trucks, (filing 108, ex. 2 (Steve Moore affidavit), & sub-ex. 2–A § 37), "brake chamber push rods" must undergo a pre-trip inspection. Freightliner has offered nothing to support a claim that the term "brake pedal push rod" and "brake chamber push rod" describe the same part.

The affidavit of Sean Burklund states that a brake pedal push rod and a brake chamber push rod are not the same thing, (filing 118, Burklund affidavit ¶ 3), and intuitively, that makes sense. A brake chamber (see filing 108, ex. 3, sub. ex 3–C, A. Moore depo. at 110 (describing brake chamber)), and a brake pedal are not the same thing.

As the party requesting withdrawal of its deemed admission, Freightliner has the burden of proving a withdrawal is necessary to preserve a trial on the true merits of the case. Freightliner literally wrote the book describing the pre-trip inspection requirements, and with access to in-house experts, it knows its driver's manual requires pre-trip inspections of brake chamber push rods and not brake pedal push rods—the part at issue in this case. Its attempt to inject this red herring into the case at this late date has caused an unnecessary delay of the case's progression not justified by any "newly discovered" evidence; has burdened the plaintiff with having to respond to the claim with an expert's affidavit; and has burdened the court with sorting through a substantial record produced on discovery issues, only to conclude there is no factual support for Freightliner's argument.

Freightliner also argues that Brandt's twenty-five percent off-road use of the truck was unreasonable and unforeseeable, and therefore the deemed admission to Request for Admission No. 3 contradicts the true facts of this case and must be withdrawn. This argument presents a closer question than the alleged pre-trip inspection argument, but it fails nonetheless.

Based on Freightliner's admissions to the Oregon court, it is undisputed that the brake pedal push rod broke; this brake failure caused the accident; and Freightliner is at least partially liable for the accident. These prior admissions are not contradicted by the record herein. The defendant's evidence states that the braking systems provided in heavy and medium duty trucks were different, but irrespective of which type of truck Brandt ordered, both were equipped with the same brake pedal push rod—the five-sixteenths-inch push rod which Freightliner recalled after this accident. (Filing 108, An-

thony Moore affidavit ¶ 11). Freightliner has presented evidence that the truck involved in this accident was not designed to be used off-road twenty-five percent of the time and that, in general, heavier brakes withstand harsher conditions over a longer duty cycle. However, Freightliner has not cited to any evidence that Whyrick's history of using this truck is reflective of the overall historical use of this truck, nor that Brandt's alleged method of using this Freightliner truck was a likely cause of the brake pedal push rod failure that caused the accident. I therefore conclude Freightliner has not met its burden of proving the facts of the admission are untrue or affect a finding on the merits.

Moreover, plaintiffs' case has been pending either in Oregon or this court for over two years. Based on statements made by Freightliner, both the plaintiffs and the Oregon court were justified in believing discovery from Freightliner on the issue of proximate cause would not be necessary and that Freightliner was admitting the "brake pedal push rod . . . failed to withstand reasonable and foreseeable use." Request for Admission No. 3. Freightliner's counsel stated, "The thing broke, it shouldn't have broke [sic], and frankly it was not big enough . . . and it was not effective to withstand the forces used." Filing 21, ex. F at 7. In arguing for dismissal in Oregon, Freightliner stated:

> First, plaintiffs have apparently forgotten that Freightliner has continuously informed them that it accepted responsibility for the failure of the service brake system, because the push rod was defective and that it is not contesting the claim that the design was defective as to the failed part involved in this accident.

> Plaintiffs also ignore the complexity of Freightliner's defense in this case. While the admitted defect was a cause of an accident *in Nebraska*, the circumstances of that accident and the fault of the driver involves more "complexity" than does plaintiffs' product liability claim *which is not disputed.*

> In light of Freightliner's acceptance of the presence of a defective push rod, plaintiffs

will not need to depose a large number of Freightliner's representatives. The primary issue of the claim against Freightliner is whether the braking system on the truck in question was defectively designed. Freightliner will not contest this issue. In light of this concession, plaintiffs are not entitled to do a full investigation of Freightliner as a whole. There will be no reason to depose management.

Filing 21 ex. E, Freightliner brief (Oregon case) at p. 4 (underlined emphasis in original; italicized emphasis added).

On March 19, 2004 I ordered that Request for Admission No. 3 was deemed fully admitted. Freightliner did not appeal that order, and it did not move to withdraw the deemed admission until August 19, 2004. Freightliner's prior representations to the plaintiffs and the Oregon court, combined with its failure for five months to move to withdraw the deemed admission, has created a situation where Freightliner is now raising an unforeseen issue in the case, late in the game, and under circumstances where the plaintiffs' right to a prompt trial has already been delayed too long as a result of the defendant's failures to timely respond to discovery.

The presence of improper conduct by the party moving to withdraw or amend an admission, and that party's lack of reasonable explanation for untimely discovery responses, may be considered by the court in determining whether to grant a motion to withdraw or amend a deemed admission. The court has "the power to prevent abuse and impose sanctions" for failure to timely respond to discovery, including deeming a request admitted. *Falstaff Brewing Corp.,* 710 F.2d 1309, 1314 (8th Cir.1983) (citing *Asea, Inc. v. Southern Pacific Transportation Co.,* 669 F.2d 1242, 1247 (9th Cir.1981)).

As of the time defendant's responses to requests for admissions were due, Freightliner had retained representation from four law firms and a law professor to assist in its defense, had been afforded the opportunity to examine extensive local and federal accident investigation reports, and had an insurance claims adjustor assisting in the accident investigation. The investigation and defense

efforts were orchestrated and overseen by Freightliner's in-house counsel. Instead of simply ignoring the portion of plaintiffs' request for admission asking Freightliner to admit that the "brake pedal push rod . . . failed to withstand reasonable and foreseeable use," Freightliner was obligated to make a reasonable inquiry on this issue and determine whether the information readily obtainable was sufficient to allow it to admit or deny the particular requests. With the magnitude of information and assistance at its disposal—and especially after it settled any claim against Brandt and was no longer Brandt's adversary in this case——it is difficult to fathom how Brandt's allegedly unforeseeable and unreasonable use of the truck could not have been discovered by Freightliner until August 19, 2004.

The analysis of *Asea*, cited by the Eighth Circuit in *Falstaff*, effectively summarizes the assessment of Freightliner's ongoing discovery conduct and its impact on the motion to withdraw its deemed admission:

> The general power of the district court to control the discovery process allows for the severe sanction of ordering a matter admitted when it has been demonstrated that a party has intentionally disregarded the obligations imposed by Rule 36(a).
>
> . . .
>
> [T]his was not the first discovery problem presented to the court. Far from it. A year of volatile and acrimonious fighting, during which many discovery disputes were placed before the judge as referee, [have] preceded it. . . . Indeed, [the judge's] efforts to untangle the complicated charges and counter-charges are well demonstrated by his order requiring the [defendants] to file amendments to their interrogatory answers, which was entered simultaneously with his order deeming the requests admitted.
>
> . . .
>
> What the [defendants] are actually asserting is that they had an absolute right under Rule 36(b) to have the admissions withdrawn. Such a reading seems especially inappropriate when the Rule uses the discretionary term "the court may." A per se rule that the district court must

permit withdrawal of an admission which relates to an important or dispositive matter is inappropriate in light of the purpose of this discovery device: to narrow the issues for trial and avoid litigation of unessential facts. In a proper case, of course, such as when an admission has been made inadvertently, Rule 36(b) might well require the district court to permit withdrawal. But our review is limited to whether the district judge abused his discretion. On the record before us, we conclude he has not.

*Asea*, 669 F.2d at 1248.

For the foregoing reasons, I conclude that Freightliner's motion to withdraw its deemed admission must be denied.

> *Plaintiffs' Second Motion to Compel and Request for Rule 37 Sanctions (filing 48)*

Plaintiffs' filing 48 motion raises two issues: the defendant's failure to comply with this court's prior order requiring Freightliner to answer plaintiffs' interrogatories; and the defendant's failure to produce documents in response to plaintiffs' requests for production. Since the interrogatories are already the subject of a prior order, and the requests for production are not, these portions of the plaintiffs' motion to compel require separate analysis.

1. *Plaintiffs' Motion to Compel Responses to Requests for Production.*

In addition to the defendant's original relevancy objection to each of the plaintiffs' production requests, the defendant has provided a privilege log identifying over a thousand pages of documents and claimed these documents are not subject to discovery because they include Freightliner's self-critical analysis or trade secrets and confidential information, and because they contain attorney-client or work product communications. The plaintiffs claim the defendant has failed to timely assert the privileges and therefore they are waived. Pursuant to this court's prior order, the documents were submitted for *in camera* review; the vast majority on a CD, with five pages (bates-numbered 1499 through 1503) provided in a sealed envelope at the court's

request. Attached hereto is a listing of the court's determination as to Freightliner's objections to production and its obligation to produce these documents.

The relevancy determinations are self-explanatory. The basis for the privilege rulings requires assessing the plaintiffs' claim of waiver, and the defendant's four grounds for asserting privilege: trade secret; self-critical analysis; work product; and attorney-client privilege. The legal basis for the rulings on each of these grounds is discussed in turn hereafter.

### A. *Privilege waiver.*

■ The plaintiffs claim defendant's privilege objections were waived by Freightliner's failure to timely assert the objections. While usually a question that lends itself to an easy determination, the timeliness of the defendant's objections to requests for production is unclear. The defendant's responses were originally due on October 13, 2003, and the defendant filed no response, but during a December 22, 2003 discussion, the plaintiffs raised the issue with the defendant and the parties agreed to extend the deadline for responding to a date set by the court after it ruled on the plaintiffs' motion to compel interrogatory responses. On January 26, 2004, before I ruled on plaintiffs' motion to compel, the defendant filed a certificate of service indicating it had responded to the plaintiffs' requests for production. Therefore, my order of March 19, 2004 did not set a date for responding to the production requests. The January 26, 2004 response served by the defendant objected to every request for production on the basis of relevancy, and no privilege objections were raised. The plaintiffs claim the defendant therefore waived the privilege objections, and that may be true. However, due to the parties' numerous informal agreements to extend discovery deadlines and the tortured history of discovery in this case, it is not entirely clear when the actual deadline passed for objecting to the plaintiffs' requests for production.

Moreover, the defendant has raised numerous attorney-client and work product privilege objections. The 1993 amendments to Federal Rules of Civil Procedure introduced a new provision requiring a party withholding information on the basis of privilege or work product to make the claim expressly and provide opposing parties with a privilege log, thus enabling other parties to assess the applicability of the privilege or protection. F.R.C.P. 26(b)(5). The advisory committee comments explain that "[t]o withhold materials without such notice is contrary to the rule, subjects the party to sanctions under Rule 37(b)(2), and *may* be viewed as a waiver of the privilege or protection." F.R.C.P. 26(b)(5), 1993 advisory committee notes (emphasis added).

This advisory committee language indicates that, with respect to at least the attorney-client and work product privileges, a court may but need not consider a privilege waived when a party fails to timely raise the objection. "Waiver of a privilege objection is not automatic, particularly if the party reasonably believed that its objections applied to the document. 'As the federal rules, case law and commentators suggest, waiver of a privilege is a serious sanction most suitable for cases of unjustified delay, inexcusable conduct, and bad faith.'" *United States v. Philip Morris Inc.*, 347 F.3d 951, 954 (D.C.Cir.2003)(quoting *First Sav. Bank, F.S.B. v. First Bank Sys., Inc.*, 902 F.Supp. 1356, 1361 (D.Kan.1995)(rev'd on other grounds, 101 F.3d 645 (10th Cir.1996))). See also 8 Wright, Miller & Marcus, *Federal Practice and Procedure* § 2016.1.

Upon weighing the severity of waiving the privilege afforded attorney-client communications and opinion work product against the conduct of the defendant in failing to promptly raise these privileges, I conclude these privileges were not waived under the specific facts of this case. The trade secret and self-critical analysis privileges raised by the defendant are not afforded this degree of protection, but since I conclude these privileges lack substantive merit in this case, I need not and do not decide if they were waived.

### B. *Confidential/Trade Secrets*

Under Fed.R.Civ.P. 26(c)(7), the party opposing discovery has the initial burden to demonstrate that the information requested

is a "trade secret or other confidential research, development, or commercial information," and also that its disclosure would be harmful to the party's interest in the property. The burden then shifts to the party seeking discovery to show that the information is relevant to the subject matter of the lawsuit and is necessary to prepare the case for trial. *In re Remington Arms Co., Inc.*, 952 F.2d 1029, 1032 (8th Cir.1991).

■■■ Under Nebraska law, information "which if released would give advantage to business competitors and serve no public purpose" is confidential and not the proper subject of discovery. *Burlington Northern R. Co. v. Omaha Public Power Dist.*, 703 F.Supp. 826, 831 (D.Neb.1988). A trade secret (1) may consist of a "formula, pattern, device or compilation of information which is used in one's business, and which gives him an opportunity to obtain an advantage over competitors who do not know or use it;" (2) must be "for continuous use in the operation of the business;" (3) may "relate to the sale of goods or to other operations in the business, such as a code for determining discounts, rebates, or other concessions in a price list or catalog, or a list of specialized customers, or a method of bookkeeping or other office management;" and (4) must be secret and not generally known to the public or the industry. In addition, to assess the existence of a trade secret, the court considers "the efforts of the owner to keep the information secret and its competitive value if disclosed." *Id.* (citing Restatement of Torts, § 757, comment b.).

In *Burlington Northern*, the Nebraska Public Power District (NPPD) sought disclosure of the coal transportation contract between OPPD and Burlington Northern. After review of contract *in camera* as well as additional supporting evidence submitted by Burlington Northern in opposition to this disclosure, the court noted that the confidential pricing information had been developed at considerable expense, the information was for continuous use in business rather than a one-time event, the information was not generally known to the public, and Burlington Northern had gone to considerable lengths to keep the information secret. The contract was the subject of a strict confidentiality clause. Under these facts the court held that Burlington Northern had met its burden of proving by the greater weight of the evidence that the contract was a trade secret. *Id.* at 831.

■■■ In contrast, Freightliner has not met its burden of proving that any of the information submitted *in camera* is a trade secret. The affidavit of Burton states that the Engineering Technical Report dated April 8, 1992 (Bates-stamped 1–11) has been kept and maintained as confidential information and its release would harm Freightliner. These conclusory statements address only a small portion of the documents described as "confidential trade secrets" on the privilege log, and provide no sufficient basis for withholding discovery. The failure to "identify the trade secrets with sufficient specificity renders the Court powerless to enforce any trade secret claim." *Porous Media Corp. v. Midland Brake Inc.*, 187 F.R.D. 598, 600 (D.Minn.1999).

### C. *Self–Critical analysis*

The defendant has neither argued the merits nor submitted evidence in support of its self-critical analysis privilege, and it therefore deserves little discussion. The privilege "remains largely undefined and has not generally been recognized." *Andritz Sprout–Bauer, Inc. v. Beazer East, Inc.*, 174 F.R.D. 609, 635 (M.D.Pa.1997). It is strictly a creature of the common law, and is grounded on the basic notion that " 'disclosure of documents reflecting candid self-examination will deter or suppress socially useful investigations and evaluations or compliance with the law.' " *Sheppard v. Consolidated Edison Co.*, 893 F.Supp. 6, 7 (E.D.N.Y.1995) (quoting *Reilly v. Metro–North Commuter R.R.*, No. 93 Civ. 7317, 1995 WL 105286, at *1 (S.D.N.Y. Mar.13, 1995)) (quoting *Hardy v. New York News, Inc.*, 114 F.R.D. 633, 640 (S.D.N.Y.1987)).

The self-critical analysis privilege has been recognized as a qualified privilege which protects from discovery certain critical self-appraisals. It allows individuals or businesses to candidly assess their compliance with regulatory and legal require-

ments without creating evidence that may be used against them by their opponents in future litigation. The rationale for the doctrine is that such critical self-evaluation fosters the compelling public interest in observance of the law.

*Reichhold Chemicals, Inc. v. Textron, Inc.,* 157 F.R.D. 522, 524 (N.D.Fla.1994) (citing *Granger v. National R.R. Passenger Corp.,* 116 F.R.D. 507, 508 (E.D.Pa.1987)).

■■■ Absent some evidence to the contrary, the records designated by Freightliner as "self-critical" analysis appear to be routine internal corporate reviews of matters related to business operations, recalls, and safety concerns. In the context of products liability litigation:

> [S]uch reviews will rarely, if ever, be curtailed simply because they may be subject to discovery. Organizations have many incentives to conduct such reviews that outweigh the harm that might result from disclosure. The most prominent of these is surely the desire to avoid law suits arising from unsafe conditions.... [M]anufacturers perform safety tests not required by law not only because of the threat of products liability suits for design defects, but because a reputation for safety renders a product more marketable.
>
> ...
>
> [T]he fairness rationale offered to justify application of the privilege to documents that a party has been legally required to prepare is inapplicable to voluntarily conducted safety reviews. It may be unfair for a court to require a party to turn over to an opposing litigant self-damning assessments that the government has required it to prepare, ... [b]ut this concern obviously does not exist when the party has engaged in the self-evaluation voluntarily.
>
> ...
>
> On the other hand, information regarding a company's response to the particular hazard, as well as its general safety procedures, will be invaluable to a plaintiff attempting to prove that his injury was caused by the company's negligent failure to make safe a hazardous condition. That information may reveal not only what the

company knew of the condition, but whether it regarded it as dangerous, whether it assigned someone to repair the condition, what that person did, whether the company typically responded swiftly and effectively to hazardous conditions or allowed them to persist, and so on. Furthermore, the implications of such a rule would have major ramifications outside the area of negligence. A rule that manufacturers' reviews of the safety of their products are privileged from discovery would place a nearly insurmountable barrier in front of plaintiffs who must prove malice in order to obtain punitive damages in product liability actions.

*Dowling v. American Hawaii Cruises, Inc.,* 971 F.2d 423, 426–27 (9th Cir.1992).

Without deciding whether the "self-critical analysis" privilege can ever preclude disclosure of evidence in products liability suit, I conclude Freightliner has failed to show its applicability in this case.

### D. *Work Product privilege.*

■■■ The party asserting a privilege and resisting discovery has the burden of establishing the existence of the privilege. Fed.R.Civ.P. 26(b)(5). *Wagner v. Dryvit Systems, Inc.,* 208 F.R.D. 606, 610 (D.C.Neb.2001)(citing *Duffy v. Dier,* 465 F.2d 416, 418 (8th Cir.1972); *National Union Fire Insurance Company of Pittsburgh v. Midland Bancor, Inc.,* 159 F.R.D. 562, 567 (D.Kan.1994)). Deciding whether documents were prepared in anticipation of litigation is a factual determination.

> "The test should be whether, in light of the nature of the document and the factual situation in the particular case, the document can fairly be said to have been prepared or obtained because of the prospect of litigation. But the converse of this is that even though litigation is already in prospect, there is no work product immunity for documents prepared in the regular course of business rather than for purposes of litigation."

*Simon v. G.D. Searle & Co.,* 816 F.2d 397, 401 (8th Cir.1987)(quoting 8 C. Wright & A.

Miller, Federal Practice and Procedure § 2024, at 198–99 (1970)).

Freightliner asserts, through its in-house counsel, Burton, that the Carlson accident has been under investigation for litigation purposes since October 20, 2000, and since that time Burton has worked with claims consultants, an insurance carrier, and several lawyers preparing for litigation. He further claims work forms and claim forms for this and prior accidents were prepared in anticipation of litigation and are therefore privileged.

The work-product doctrine was recognized in *Hickman v. Taylor,* 329 U.S. 495, 67 S.Ct. 385, 91 L.Ed. 451 (1947). The doctrine reflects the practical reality that proper preparation of a client's case demands that a lawyer assemble information, sift through it to separate the relevant from the irrelevant facts, prepare legal theories and plan strategy without undue and needless interference. *Id.* at 393. The Court has therefore recognized a qualified privilege for certain materials prepared by an attorney "acting for his client in anticipation of litigation." *Id.* at 508, 67 S.Ct. 385. As explained in *United States v. Nobles,* 422 U.S. 225, 238, 95 S.Ct. 2160, 45 L.Ed.2d 141 (1975):

> [T]he work-product doctrine shelters the mental processes of the attorney, providing a privileged area within which he can analyze and prepare his client's case. But the doctrine is an intensely practical one, grounded in the realities of litigation in our adversary system. One of those realities is that attorneys often must rely on the assistance of investigators and other agents in the compilation of materials in preparation for trial. It is therefore necessary that the doctrine protect material prepared by agents for the attorney as well as those prepared by the attorney himself.

*Nobles,* 422 U.S. at 238, 95 S.Ct. 2160.

■ Work product consists of both ordinary work product and opinion work product. Ordinary work product includes raw factual information and cannot be discovered unless the party requesting discovery has demonstrated a substantial need for the materials and the party cannot obtain the substantial equivalent of the materials by other means. Opinion work product includes counsel's mental impressions, conclusions, opinions or legal theories, "enjoys almost absolute immunity," and can be discovered "only in very rare and extraordinary circumstances...." *Baker v. General Motors Corp.,* 209 F.3d 1051, 1054 (8th Cir.2000).

■ The work-product doctrine is intended only to guard against divulging the attorney's strategies and legal impressions. It does not protect facts concerning creation of work product or facts contained within work product. Thus, work product does not preclude inquiry into the mere fact of investigation. *Resolution Trust Corp. v. Dabney,* 73 F.3d 262 (10th Cir.1995). Although the work product doctrine protects documents and tangible things, the underlying facts are not protected. Only when a party seeking discovery attempts to ascertain "historical" facts which inherently reveal the attorney's mental impressions, does the ordinary work-product privilege extend protection. *Onwuka v. Federal Exp. Corp.,* 178 F.R.D. 508 (D.C.Minn.1997). As with documents and communications protected by the attorney-client privilege, a party may not rely on the work product doctrine to refuse to respond to discovery requests seeking disclosure of non-privileged facts. *Phillips Electronics North America Corp. v. Universal Electronics, Inc.,* 892 F.Supp. 108 (D.C.Del.1995).

■ Risk management documents prepared by investigators may not themselves be considered "prepared in anticipation of litigation," but to the extent that they disclose the individual case reserves for files and any mental impressions, thoughts, and conclusions of an attorney in evaluating a legal claim, they are privileged. Such documents are prepared in anticipation of litigation and, consequently, they are protected from discovery as opinion work product. *Simon v. G.D. Searle & Co.,* 816 F.2d 397, 401 (8th Cir.1987).

Accordingly, those documents listed which contain facts but do not reveal opinions or legal impressions to be garnered from those facts, and do not evidence the defendant's attempts to prepare for litigation, are not

protected under the work product doctrine. As to this analysis, the defendant has the burden of proof. For some of the documents reviewed, the work product character of the documents is self-evident; for others, it was not. Where the defendant failed to meet its burden of showing a document was protected work product, and the purpose of preparation for litigation was not obvious from reviewing it, the plaintiffs' motion to compel is granted. As to other documents, the motion is granted subject to appropriate redaction.

### E. Attorney–Client privilege.

The work-product doctrine is distinct from and broader than the attorney-client privilege. *Nobles*, 422 U.S. at 238 n. 11, 95 S.Ct. 2160 (citing *Hickman v. Taylor*, 329 U.S. at 508, 67 S.Ct. 385). In diversity cases, privileges are determined according to the state law that supplies the rule of decision. Fed.R.Evid. 501. Rule 501 does not, however, specify which state's privilege rules control. Under the *Erie* doctrine, a federal court looks to the forum state's conflict of laws rules in determining which state's privilege law applies. See *Klaxon v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941). However, where the attorney-client privilege law, and therefore its application to the documents at issue, is the same irrespective of which state's law is applied, the court need not resolve the choice-of-law issue. *Baker v. General Motors Corp.*, 209 F.3d at 1053.

In this case the parties have an ongoing dispute over whether Oregon or Nebraska law governs the punitive damages issue. However the states' attorney-client privilege provisions are nearly identical. As applied to this case, in both Nebraska and Oregon a client may refuse to disclose and prevent any other person from disclosing confidential communications made for the purpose of facilitating the rendition of professional legal services, including communications between the client or its representative and the client's lawyer or the lawyer's representative; between the lawyer and the lawyer's representative; or between lawyers representing the client. Neb.Rev.Stat. § 27–503; O.R.S. § 40.225. Those documents ex-changed between Freightliner's in-house and retained counsel, and those exchanged between its counsel (retained or in-house) and Freightliner management or insurer employees for the purpose of rendering legal advice are protected under the attorney-client privilege.

### F. Requests for Production 2, 3, 4, 8, 11, 12, 14, 15, and 18.

As of July 15, 2004, Freightliner continued to object on relevancy grounds to Requests for Production 11, 12, 14, 15, and 18. The requests pertain to Freightliner medium-duty or heavy-duty air brake equipped Business Class trucks, Model Nos. FL50, FL60, FL70, and FL80, and for the period of May 1, 1991 through November 10, 2000, request Freightliner to produce:

- documents containing instructions and warnings to consumers regarding the braking system and brake pedal push rods (Request for Production No. 11);

- documents discussing any cost-benefit analysis, economic study, or accounting study for replacement of the brake pedal push rods (Request for Production No. 12);

- any design studies regarding the size, utility, and structural integrity of the brake pedal push rod (Request for Production No. 14);

- all patents held or licensed by Freightliner regarding the structural configuration of the braking system (Request for Production No. 15); and

- documents discussing any changes in the braking system (Request for Production No. 18).

Filing 59, ex. 4. The information sought by these requests is relevant and must be disclosed.

Further, as to Request for Production Nos. 2, 3, 4, and 8, the defendant is not objecting but has promised responses to these requests at a future time. To the extent these request remain unanswered, a full and complete response will be ordered.

Upon review of the entire filed record of this case, I conclude that while some of the

defendant's objections should be sustained, its overall conduct in failing to respond to plaintiffs' requests for production, and in asserting its privilege claims as to some of the documents, was unwarranted and unjustified. Portions of this history, chronologically set out above, nonetheless bear repeating:

- At the outset, Freightliner escaped a motion to compel responses to production requests (which would surely have included an argument that all objections were waived by its failure to serve any response) by convincing plaintiffs' counsel that responses to the document requests would be forthcoming once the parameters of discovery were determined by the ruling on plaintiffs' motion to compel interrogatory responses. That promise was not kept. Filing 50, ex. X (Mullin affidavit) ¶ 7.

- The defendant escaped an order imposing attorney fees on the motion to compel answers to interrogatories by persuading plaintiffs' counsel to forego that relief in exchange for Freightliner's assurance that it would cooperate with discovery thereafter. That promise was not kept. Filing 50, ex. X (Mullin affidavit) ¶ 9 and sub-ex. O.

- Freightliner's counsel assured plaintiffs' counsel that answers to interrogatories and production responses would be served by May 4, 2004, but despite an extension of time granted by plaintiffs' counsel and the existence of a court order as to the interrogatories, only part of the interrogatories and none of the production requests were answered by May 10, 2004. Filing 50, ex. X (Mullin affidavit) ¶¶ 9–11.

- When confronted on May 11, 2004 as to the failure to respond to the requests for production, Mr. Ahl responded, "There is no order compelling discovery of Plaintiffs' first request for production of documents," even while acknowledging his prior agreement to do so. That theme has been repeated on the pending motion to compel document discovery. Filing 50, ex. X (Mullin affidavit) ¶ 12. Mr. Ahl's affidavit points out that "Prior to June 30, 2004, the Plaintiffs have not

filed a motion to compel in regard to the Request for Production of Documents [.] Nor has there been an Order to Compel issued by the Court in association with the Plaintiffs' Request for Production of Documents." Filing 59, ex. 3 (Ahl affidavit) ¶ 9.

- Freightliner was again granted a two week extension by plaintiffs' counsel, and thereafter a claim of "privilege" began to arise; with privilege logs missing, then provided, then revised, and ultimately reflecting that pages of bates-stamped documents were unaccounted for or missing from the loosely organized production response to only Requests for Production Nos. 1 and 2 provided on June 7, 2004. Further attempts to obtain full cooperation with discovery without further court intervention were wholly unsuccessful and resulted in the filing of this motion. Filing 50, ex. X (Mullin affidavit) ¶¶ 12–16.

Freightliner's actions in conducting discovery can only be described as, at best, cavalier. They violate the letter, spirit, or purposes of the federal rules; that being "to secure the just, speedy and inexpensive determination of every action." *Wagner*, 208 F.R.D. at 611 (quoting Fed.R.Civ.P. 1). To require an opposing party to file a motion to compel in order to trigger *any* obligation to even respond to discovery requests in the first instance violates every tenet of the discovery rules. Plaintiffs' counsel attempted in good faith to resolve this matter without significant court intervention; but as to many of the documents, the most noteworthy being the 1992 and 2000 reports mentioned in Anthony Moore's 30(b)(6) deposition, the plaintiffs' good faith attempts were met with arrogant disdain. Defendant's and its counsel's obstructive abuse of the discovery process and of the professional courtesies extended by plaintiffs' counsel are the absolute antipathy of the facilitation of a "just, speedy and inexpensive determination of every action." In addition, it has undermined the credibility of this court's ultimate resolution of this dispute, as there is no longer any

confidence that the true facts and evidence have been disclosed as required by the law.[2]

In these circumstances it is necessary to at least attempt to restore some semblance of credibility and fairness in the procedural development of this case. I shall order Freightliner to disclose all documents responsive to plaintiffs' request for production, except to the extent that plaintiffs' motion to compel is denied. This document production response shall be signed by not only Freightliner's litigation counsel but also by Freightliner's corporate counsel, Mr. Brian Burton. Mr. Burton shall formally verify under oath that *all* responsive documents have been disclosed and produced if they exist, and further, that no responsive documents have been destroyed or transferred, or, if some have been destroyed or transferred, a complete listing and description of all such documents and when and by whom each was destroyed or transferred, together with a complete description of the circumstances of each document's destruction or transfer. *Wagner*, 208 F.R.D. at 610.

I shall also enter an award against the defendant and its counsel in the amount of plaintiffs' attorney fees and expenses incurred in pursuing the motion to compel responses to its requests for production. I shall also grant plaintiffs leave to file a motion to recover any reasonably incurred additional deposition expenses for re-deposing Freightliner's witnesses and/or conducting other unnecessarily repeated discovery regarding documents released after the plaintiffs filed their June 30, 2004 motion to compel. (Plaintiffs' counsel are reminded of their duty to mitigate).

Finally, as to the first motion to compel, filing 28, plaintiffs were given leave to file an application for fees and expenses within twenty days of the order granting that motion. Filing 35. Plaintiffs did file such an application based on the following agreement between counsel as explained by letter to the undersigned:

> Mr. Ahl and I have agreed to a process on discovery that will have him answer the written discovery by the 4th day of May, 2004 which will be followed up with depositions in Oregon. As a part of that arrangement I have advised Mr. Ahl that I would not seek costs and attorney fees under the order on the motion to compel. I trust that is acceptable to the court since your order indicated that I was not required to do so.

Filing 50, ex. O. Mr. Ahl did not comply with his obligations under this agreement. I shall therefore renew my order giving the plaintiffs leave to submit their request for attorney fees and expenses related to their first motion to compel, filing 28.

2. *Plaintiffs' Motion to Compel Answers to Interrogatories and Request for Sanctions.*

This court's March 19, 2004 order (filing 35) required the defendant to serve supplemental answers to plaintiffs' interrogatories 1, 2, 4, 5, 7, 9, 10, 11, 13, 15, 16, 17, and 20 within ten days. This order was appealed and affirmed on April 14, 2004 (filings 36 & 43).

As of the June 30, 2004 filing of plaintiffs' pending motion to compel and request for sanctions (filing 48), the defendant had not served answers to interrogatories 4 and 5. These interrogatories stated:

**Interrogatory No. 4:** How many replacement parts including the brake piston rod,

---

2. Counsel for the defendant are reminded of the following:
   This court's Policy on Uncivil and Unprofessional Conduct affirmatively states,
   "The litigation process, although adversarial in nature, should be nondiscriminatory and professional .... Conduct that may be characterized as uncivil, abrasive, abusive, hostile, or obstructive impedes the fundamental goal of resolving disputes rationally, peacefully, and efficiently, and such conduct tends to delay and often deny justice." NEGenR 1.8(e)(2)(formerly general order 99–04).

Lawyers' conduct is further governed by the ethical codes.
   In "representation of a client, a lawyer shall not ... [c]onceal or knowingly fail to disclose that which the lawyer is required by law to reveal." Code of Professional Responsibility DR 7–102(A)(3).
   "Because it interferes with the proper administration of justice, a lawyer should not suppress evidence that the lawyer or his or her client has a legal obligation to reveal or produce." Code of Professional Responsibility EC 7–27.

clevis, brake valve plunder or boot have been ordered and/or shipped between May 1, 1991 and November 2, 2002 to dealers, independent distributors, repair facilities, service centers, customers or owners whether purchased or through warranty.

**Interrogatory No. 5**: For each of the parts identified in respect to your answer to interrogatory no. 4, set forth the following:

1. Specifically identify the part;

█. The date the part was shipped; and

█. To whom the part was shipped.

Between April 14, 2004 and June 30, 2004 the plaintiffs' attempts to obtain answers and the defendant's responses were as follows:

April 16, 2004: Freightliner's counsel represented that discovery responses would be provided by May 4, 2004.

May 4, 2004: Freightliner's counsel asked plaintiffs' counsel for an extension of time to respond to discovery and was given until May 10, 2004.

May 10, 2004: Interrogatory responses were served but these responses did not include answers to interrogatories 4, 5, 15, and 16. As to Interrogatories 4 and 5, Freightliner stated "[w]e are presently attempting to assemble the information necessary to respond to this interrogatory and will supplement this answer when it is available." (Filing 50, ex. P).

June 8, 2004: Freightliner had still not responded to interrogatories 4 and 5, and plaintiffs' counsel notified defendant's counsel of their intent to seek sanctions.

On July 15, 2004, after the plaintiffs filed their pending motion to compel and request for sanctions, Freightliner provided a supplemental answer to interrogatory 4 and attached a computer printout responsive to interrogatory 5. Even then Burton, the defendant's in-house counsel, represented that the printout was the best Freightliner could do without spending a great deal of time researching files dating back ten years. Filing 59, ex. 1 (Burton affidavit) ¶ 22. In other words, interrogatories 4 and 5 were still not fully answered. Under the Federal Rules of Civil Procedure, "an evasive or incomplete disclosure, answer, or response is to be treated as a failure to disclose, answer, or respond." F.R.C.P 37(a)(3).

█ Assuming there was no prior order compelling full and complete answers, Freightliner's current excuse of undue burden would fail to justify its untimely and incomplete responses to plaintiffs' discovery. An objection that discovery is overly broad and unduly burdensome must be supported by affidavits or evidence revealing the nature of the burden and why the discovery is objectionable. It is not sufficient to simply state that the discovery is overly broad and burdensome, nor is a claim that answering the discovery will require the objecting party to expend considerable time and effort analyzing "huge volumes of documents and information" a sufficient factual basis for sustaining the objection. *Wagner*, 208 F.R.D. at 610 (quoting *Roesberg v. Johns–Manville Corp.*, 85 F.R.D. 292, 296–97 (E.D.Pa.1980)).

More importantly, "undue burden" provides no justification when the objection was previously unsuccessfully raised in response to a motion to compel and the defendant has been ordered to answer. Federal Rule of Civil Procedure 37(b)(2) provides:

If a party or an officer, director, or managing agent of a party ... fails to obey an order to provide or permit discovery, ... the court in which the action is pending may make such orders in regard to the failure as are just, and among others the following:

(A) An order that the matters regarding which the order was made or any other designated facts shall be taken to be established for the purposes of the action in accordance with the claim of the party obtaining the order;

(B) An order refusing to allow the disobedient party to support or oppose designated claims or defenses, or prohibiting that party from introducing designated matters in evidence;

(C) An order striking out pleadings or parts thereof, or staying further proceedings until the order is obeyed, or dismissing the action or proceeding or any part

thereof, or rendering a judgment by default against the disobedient party;

(D) In lieu of any of the foregoing orders or in addition thereto, an order treating as a contempt of court the failure to obey any orders except an order to submit to a physical or mental examination;

. . .

In lieu of any of the foregoing orders or in addition thereto, the court shall require the party failing to obey the order or the attorney advising that party or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the court finds that the failure was substantially justified or that other circumstances make an award of expenses unjust.

Based on the discovery history in this case, I conclude Freightliner's conduct has been dilatory throughout the discovery process and has undermined the purposes of discovery.

Interrogatories 4 and 5 request information concerning replacement brake piston rods, clevises, and brake valve plungers or boots ordered and/or shipped by Freightliner between May 1, 1991 and November 2, 2002 to dealers, independent distributors, repair facilities, service centers, customers or owners. The interrogatories request the specific identity of the parts ordered and shipped, shipment dates, and the recipient of the shipments. These interrogatories are relevant to the issue of foreseeability currently disputed in this litigation. Specifically, Freightliner's answers concerning requests for replacement brake parts, and a listing of who requested these parts and when, are relevant to determining whether, "[w]hen the Freightliner dump truck in question left Defendant's possession, the service brakes were defectively designed in that the brake pedal push rod was not strong [enough] to perform as safely as an ordinary consumer would expect when it was used in a manner intended by Defendant or reasonably foreseeable to Defendant," and whether this "defective brake pedal push rod made the Freightliner truck in question unreasonably dangerous for its intended use." Filing 66, plaintiffs' brief in support of summary judgment, ¶¶ 6 and 7.

The plaintiffs claim these allegations are undisputed, (see *id.*), while the defendant claims the brake pedal push rod of the Freightliner truck at issue "was strong enough to perform as safely as an ordinary consumer would expect when the vehicle was used in a manner intended, or reasonably foreseeable by Freightliner," and "the brake pedal push rod was neither defective, nor unreasonably dangerous for its intended use." Filing 107, Freightliner's brief in opposition to summary judgment, ¶¶ 3 and 4. Freightliner claims it has admitted that its negligence was the cause of the brake pedal push rod failure, and a proximate cause of the collision which caused or contributed to the decedent's injuries or damages, but it has neither admitted, nor been judicially deemed to have admitted that the brake pedal push rod was defective when the Freightliner truck at issue left its possession. Filing 107, Freightliner's brief opposing summary judgment, ¶¶ 5 and 6.

I conclude that despite this court's prior order, plaintiffs' courtesy in extending time, and plaintiffs' June 8, 2004 warning that sanctions would be sought, Freightliner has purposefully failed to completely and fully respond to the plaintiffs' interrogatories served on September 10, 2003. Under the guidance of not only retained Nebraska counsel but also in-house counsel, Freightliner has willfully failed to comply with this court's prior order, and even to date, has not assured the plaintiffs or this court that its answers are complete.

The record "clearly discloses a course of conduct amounting to flagrant noncompliance with the orders of the court and the Federal Rules of Civil Procedure which resulted in delaying litigation and frustrating discovery," a consistent failure to respond to discovery requests, a disregard of this court's prior order without an adequate or timely explanation, and "insufficient and defective offers of discovery eventually made even after numerous extensions of time." *Denton v. Mr. Swiss of Missouri, Inc.*, 564 F.2d 236, 240 (8th Cir.1977)(where answers to some interrogatories were filed with the court, but they were "wholly deficient, revealing little or nothing," the party's willfulness or bad faith

in failing to cooperate with discovery warranted dismissal). See also *Avionic Co. v. General Dynamics Corp.*, 957 F.2d 555, 556 (8th cir.1992)(sanction of dismissal was appropriate where plaintiffs' company president refused to answer deposition questions).

At every step of plaintiffs' litigation against Freightliner, their attempts to obtain timely discovery responses have been thwarted. To the plaintiffs' prejudice, the case and trial dates have been significantly delayed, and the plaintiffs have been denied information necessary to obtain full and complete expert opinions, thoroughly depose witnesses, investigate the defendant's lack of foreseeability claim, and respond to its summary judgment on the punitive damages issue.

Rule 37(b)(2) permits a court to impose sanctions that include striking pleadings or allegations, entering a default judgment, holding the defendant in contempt, refusing to permit the defendant to oppose or advance certain claims or defenses, or designating certain facts as established for the purposes of an action. Of these sanctions, the least drastic is entering an order designating that certain facts shall be deemed established for the purposes of this lawsuit. F.R.C.P. 37(b)(2)(A).

In this case the defendant's position on liability, and accordingly the scope of discovery, has remained hard to "pin down" for over two years: in Oregon, it admitted some liability but denied that it alone was liable for the accident; in Nebraska, it denies that the accident was foreseeable and now asks to assert a misuse defense which it claims should bar any recovery by the plaintiffs. In furtherance of its evasive positioning, it has failed to timely respond to discovery focused on assessing whether and to what extent Freightliner had notice that the brake pedal push rods installed in their trucks were defectively designed. Against this backdrop I conclude that the least onerous sanction is to deem the following facts and claims established and undisputed for the purpose of this action:

> When the Freightliner dump truck in question left Defendant's possession, the service brakes were defectively designed in

that the brake pedal push rod was not strong enough to perform as safely as an ordinary consumer would expect when it was used in a manner intended by Defendant or reasonably foreseeable to Defendant; and

> The truck's defective brake pedal push rod made the Freightliner truck in question unreasonably dangerous for its intended use.

Not only is this sanction authorized under Rule 37(b)(2)(A), but it is the least drastic sanction warranted under the facts of this case. It does little more than designate facts that are consistent with Freightliner's prior admission to the Oregon court; specifically, that it is liable, at least in part, for this accident.

Deeming the foregoing facts to be established does not eliminate the plaintiffs' need for responses to the interrogatories in question. The information sought may also be relevant to the plaintiffs' pending punitive damage claim.

> Complete and accurate responses to discovery are required for the proper functioning of our system of justice.... The parties have a duty to provide true, explicit, responsive, complete and candid answers to discovery, ... and their attorneys have a continuing duty to advise their clients of their duty to make honest, complete, non-evasive discovery disclosures, as well as the spectrum of sanctions they face for violating that duty.... Providing false or incomplete discovery responses violates the Federal Rules of Civil Procedure and subjects the offending party and its counsel to sanctions.

*Wagner*, 208 F.R.D. at 609–610 (internal citations omitted).

As of this writing, Freightliner's in-house counsel states that the printout it has provided in response to Interrogatories 4 and 5 is the best Freightliner can do without spending a great deal of time researching files. Filing 59, ex. 1 (Burton affidavit) ¶ 22. The interrogatory responses were originally due over a year ago, and the objections overruled six months ago. A great deal of time has passed; the time has come to fully answer

these questions. I shall therefore further order that on or before December 9, 2004, Freightliner shall provide full and complete answers to Interrogatories 4 and 5, signed under oath by Brian Burton, in-house counsel for Freightliner, and attesting under oath that all information responsive to plaintiffs' Interrogatories 4 and 5 has been disclosed.

I further conclude that the defendant's conduct and that of its counsel was not substantially justified. I shall therefore order it to pay the reasonable expenses, including attorney's fees, caused by its failure to comply with this court's prior order.

### Plaintiffs' Motion to Enlarge Time for Disclosing Expert Witnesses (filing 51)

The plaintiffs' motion to enlarge time for disclosing expert witnesses shall be granted. Plaintiffs shall be given until thirty days after the defendant fully complies with this order to disclose their experts.

IT THEREFORE HEREBY IS ORDERED:

1. Plaintiffs' Second Motion to Compel and Request for Rule 37 Sanctions (filing 48) is granted in part and denied in part as follows:

A. Plaintiffs' request for an order compelling Defendant to answer fully and completely Interrogatories Nos. 4, 5, 9, 15, and 16 is granted.

B. On or before December 14, 2004:

(i) Freightliner shall provide full and complete answers to Interrogatories 4 and 5.

(ii) As to Interrogatory Nos. 4, 5, 9, 15, and 16, all of which are the subject of plaintiffs' motion, Mr. Brian Burton, on behalf of Freightliner, shall sign and attest under oath that all information responsive to these interrogatories has been disclosed.

C. Pursuant to Federal Rule of Civil Procedure 37(b)(2)(A), the following facts shall be taken to be established for the purposes of this action:

(i) When the Freightliner dump truck in question left Defendant's possession, the service brakes were defectively designed in that the brake pedal push rod was not strong enough to perform as safely as an ordinary consumer would expect when it was used in a manner intended by Defendant or reasonably foreseeable to Defendant; and

(ii) The truck's defective brake pedal push rod made the Freightliner truck in question unreasonably dangerous for its intended use.

D. The rulings on documents submitted for *in camera* review are set forth in the appendix to this order and incorporated herein by reference. Except to the extent that defendant's objections were granted pursuant to the court's *in camera* review, plaintiffs' motion to compel Responses to Requests for Production Nos. 3 through 19 is granted, and on or before December 14, 2004:

(i) Freightliner shall provide full and complete responses to Requests for Production Nos. 3 through 19; and

(ii) This document production response shall be signed by not only Freightliner's counsel for this litigation, but also by Mr. Brian Burton, as in-house counsel for Freightliner. Mr. Burton shall formally verify under oath that *all* responsive documents have been disclosed and produced if they exist, and further, that no responsive documents have been destroyed or transferred, or, if some have been destroyed or transferred, he shall provide a complete listing and description of all such documents and when and by whom each was destroyed or transferred, together with a complete description of the circumstances of each document's destruction or transfer.

E. Plaintiffs are given leave to file a motion to recover any additional deposition expenses they incurred in re-deposing Freightliner's witnesses and/or conducting other unnecessarily repeated discovery regarding documents

released after the plaintiffs filed their June 30, 2004 motion to compel.

   F.  Plaintiffs are also given leave to file an application for fees and expenses regarding the first motion to compel.

   G.  Within 20 days of the date of this order, plaintiffs' counsel shall provide to defendant an itemized statement of plaintiffs' fees and expenses related to bringing this motion and the first motion to compel. The parties shall attempt in good faith to reach an agreement regarding the amount to be awarded by the court under Rule 37(a). If no agreement can be reached, plaintiffs' counsel shall submit their application for fees to this court within 30 days of this order for the court's resolution of this issue.

   H.  The clerk shall make any award of attorneys fees and expenses herein a part of any judgment eventually entered in this case unless the parties file a statement with the clerk advising that the award of fees and expenses was paid prior to judgment, accompanied by evidence of the payment.

2.  Plaintiffs' motion to enlarge the time for disclosing expert witnesses, filing 51, is granted. Plaintiff is given until thirty days after the defendant fully complies with this order to disclose its experts.

3.  Defendant's motion to amend the amended answer, filing 102, is denied.

4.  Defendant's motion to withdraw and amend the deemed admission regarding the prior order on plaintiffs' motion to compel, filing 104, is denied.

5.  Defendant's motion to strike filings 117 and 118, filing 124, is denied.

### APPENDIX

### Privilege Log Rulings

**1 to 11**

Engineering Technical Report–FLN Brake and Clutch Control Component Structural Evaluation, Objection raised: Proprietary Trade Secret Ruling: Motion to compel granted. Now subject to a protective order, filing 136.

**12 to 23**

Memo on FL90 Clutch/Brake Pedal Assembly Hub–Pedal Arm Swage Joint Strength Objection raised: Proprietary Trade Secret Ruling: Motion to compel granted. Now subject to a protective order, filing 136.

**76 to 80**

Work Form-with phone message from Bob Lantrip dated 3–13–98 (regarding Tennessee accident of February 28, 1998) Objection raised: Work Product Ruling: Motion to compel granted in part and denied in part. Pages 76–77 shall be disclosed with sections entitled "Reserves" and "Modified Reserves" (p. 76) redacted. Pages 78–80 shall be disclosed with estimates as to value of truck and car damage redacted (see p. 80).

**147**

Log sheet-Cooper Moving Equipment Objection raised: Work Product Ruling: Motion to compel denied. Document irrelevant.

**177**

e-mail from Linda Vierra, FL Claims Adjuster to Freightliner staff dated 8/09/99 (regarding August 5, 1999 accident) Objection raised: Work Product, Trade Secret, Self–Critical Analysis Ruling: Motion to compel granted.

**178–79**

Work Form-sets up claim file (Deffenbaugh) (for Nebraska accident of August 5, 1999) Objection raised: Work Product Ruling: Shall be disclosed with sections entitled "Reserves" and "Modified Reserves" (p. 178) redacted.

**285**

e-mail from Linda Vierra, FL Claims Adjuster to Freightliner staff dated 9/29/99 (regarding August 5, 1999 accident) Objection raised: Work Product, Trade Secret, Self–Critical Analysis Ruling: Motion to compel granted.

**331**

e-mail re: Deffenbaugh brake pin dated June 2, 2000. Objection raised: Work Product Ruling: Motion to compel granted. Note: This

document was copied to "friesen@omaha-truck.com."

333

handwritten note, re: Deffenbaugh dated June 9, 2000. Objection raised: Work Product Ruling: Motion to compel denied. Document irrelevant.

334–335

phone message re: Deffenbaugh dated June 12, 2000 Objection raised: Work Product Ruling: Page 333: Motion to compel denied. Document irrelevant. Page 334: Motion to compel denied. Document irrelevant. Page 335: Shall be redacted beginning at "local dealer" and to the end of the document, and the remainder of the page produced.

336

e-mail re: Deffenbaugh dated June 13, 2000 Objection raised: Attorney Client, Work Product Ruling: Motion to compel denied. Document provides no relevant objective facts unavailable from other sources (including those to be disclosed in response to this order), but does include attorney/client communication.

337

e-mail re: Deffenbaugh (includes 336) dated June 13, 2000 Objection raised: Attorney Client, Work Product Ruling: Motion to compel denied. Document provides no relevant objective facts unavailable from other sources (including those to be disclosed in response to this order), but does include attorney/client communication.

338–339

e-mail re: Deffenbaugh dated June 14, 2000 Objection raised: Attorney Client, Work Product Ruling: Motion to compel denied. Documents are attorney/client communications.

340

e-mail re: Deffenbaugh dated 06/13/00 Objection raised: Attorney Client, Work Product Ruling: Motion to compel denied. Document provides no relevant objective facts unavailable from other sources (including those to be disclosed in response to this order), but does include attorney/client communication.

341–344

e-mails re; Deffenbaugh, includes 337 dated June 21, 2000. Objection raised: Work Product, Attorney Client. Defendant has offered to disclose these documents provided the e-mail from Brain Burton is redacted. Ruling: Pages 341, 342, and 344: Motion to compel denied. Page 343: Motion to compel granted.

350

Memo re: settlement authority, Deffenbaugh dated June 23, 2000. Objection raised: Work Product, Attorney Client Ruling: Motion to compel denied. Document irrelevant and work product.

351

hand written note re: Deffenbaugh dated July 21, 2000 (written by defendant's corporate counsel) Objection raised: Work Product, Trade Secret, Self–Critical Analysis Ruling: Motion to compel granted.

385–386

Work Form re: Brandt Excavating dated November 13, 2000 Objection raised: Work Product, Attorney Client Ruling: Motion to compel granted. Shall be disclosed with sections entitled "Cause Code," "Reserves" and "Modified Reserves" (p. 385) redacted.

767

Memo to file on reserves: Brandt Excavating/Carlson dated October 20, 2000 Objection raised: Work Product Ruling: Motion to compel denied (work product).

784–785

Claim–Brandt Excavating/Nebraska Accident dated October 20, 2000 Objection raised: Work Product Ruling: Motion to compel denied (work product).

786–788

Handwritten notes by corporate counsel regarding Brandt Excavating dated October 20, 2000. Objection raised: Work Product Ruling: Motion to compel denied (work product).

796

letter re: Brandt Excavating dated 10/23/00 from claims department to corporate counsel.

Objection raised: Work Product, Attorney Client. Ruling: Motion to compel denied (work product and attorney/client privilege).

814–815

Work Form: Brandt/Carlson drafted by counsel and dated October 28, 2000. Objection raised: Work Product Ruling: Motion to compel granted: Shall be disclosed with section entitled "Type," "Cause Code," "Reserves," and "Modified Reserves" (see p. 814) redacted.

821

Claims department memo to file re: Brandt Excavating dated October 26, 2000 Objection raised: Work Product Ruling: Motion to compel denied (work product).

828

handwritten note: Brandt Excavating written by corporate counsel dated October 25, 2000 Objection raised: Work Product Ruling: Motion to compel denied (work product).

829

handwritten note: Brandt Excavating written by corporate counsel dated October 25, 2000 Objection raised: Work Product Ruling: Motion to compel denied (work product).

830–832

handwritten note re: NTSB investigation written by corporate counsel dated October 26, 2000 Objection raised: Work Product Ruling: Motion to compel denied (work product).

833–834

handwritten note re: NTSB investigation written by corporate counsel dated October 26, 2000 Objection raised: Work Product Ruling: Motion to compel denied (work product).

838–842

e-mail re: Deffenbaugh from corporate counsel to Freightliner management dated October 27, 2000 Objection raised: Work Product, Attorney Client Ruling: Motion to compel denied (work product and attorney/client privilege).

847, 848

handwritten note-property damage: Brandt accident written by corporate counsel and dated October 27, 2000. Objection raised: Work Product Ruling: Motion to compel denied (work product).

849, 850

handwritten note re: NTSB investigation written by corporate counsel dated October 27, 2000 Objection raised: Work Product Ruling: Motion to compel denied (work product).

851, 852

handwritten note re: NHTSA investigation written by corporate counsel dated October 27, 2000 Objection raised: Work Product Ruling: Motion to compel denied (work product).

853, 854

handwritten note re: NTSB investigation written by corporate counsel dated October 27, 2000 Objection raised: Work Product Ruling: Motion to compel denied (work product).

972

handwritten note re: Cooper documenting custody of pin written by corporate counsel dated November 2, 2000 Objection raised: Work Product Ruling: Motion to compel denied (work product) absent showing of substantial need.

981

handwritten note: re possible mediator written by corporate counsel Objection raised: Work Product Ruling: Motion to compel denied (attorney/client privilege and work product).

990

handwritten note re: Brandt. Documenting phone call communication between corporate counsel and management dated November 7, 2000 Objection raised: Work Product, Attorney Client Ruling: Motion to compel denied (attorney/client privilege and work product).

991–1007

letter to corporate counsel re: Brandt Excavating—report of claims investigation/witness interviews dated November 7, 2000 Objection raised: Work Product Ruling: Pages 991–

999 Motion to compel denied (attorney/client privilege and work product). Pages 1000–1007 Photographs. Motion to compel granted.

### 1071–1076

fax cover sheet (November 8, 2000) forwarding motor vehicle accident report to attorney Marlin Polk Objection raised: Attorney Client, Work Product Ruling: Pages 1071–72 Motion to compel denied. Documents irrelevant. Pages 1073–76 Motor vehicle accident report. Motion to compel granted.

### 1082–1084

fax re: retaining Marlon Polk as counsel dated November 9, 2000 Objection raised: Attorney Client, Work Product Ruling: Motion to compel denied. Documents irrelevant.

### 1085–1090

fax: Marlon Polk forwarding obituaries and mediator brochure to defendant's corporate counsel dated November 9, 2000 Objection raised: Attorney Client, Work Product Ruling: Page 1085 Motion to compel denied. Document irrelevant. Pages 1086–88 (Obituaries) Motion to compel granted. Pages 1089–90 (mediator brochure) Motion to compel denied. Document irrelevant.

### 1091–1092

handwritten note (November 9, 2000) documenting phone conversation between corporate counsel and Marlon Polk Objection raised: Attorney Client, Work Product Ruling: Motion to compel denied (attorney/client privilege and work product).

### 1093

handwritten note re: documenting phone call with Polk dated November 10, 2000 Objection raised: Attorney Client, Work Product Ruling: Motion to compel denied (attorney/client privilege and work product).

### 1111–1112

Claim entry-Judith Luehrs (indicating reserves and corporate counsel handwritten correction)-dated November 13, 2000 Objection raised: Work Product Ruling: Motion to compel denied (work product).

### 1113–1114

Claim entry-Judith Luehrs (same as 1111–1112 with corrections incorporated) dated November 13, 2000 Objection raised: Work Product Ruling: Motion to compel denied (work product).

### 1115–1116

Claim entry-Melissa Holton (indicating reserves) dated November 13, 2000 Objection raised: Work Product Ruling: Motion to compel denied (work product).

### 1117–1118

Claim entry-Shirley Carlson (indicating reserves) dated November 13, 2000 Objection raised: Work Product Ruling: Motion to compel denied (work product).

### 1119–1120

Claim–State Farm (indicating reserves and corporate counsel handwritten correction)-dated November 13, 2000 Objection raised: Work Product Ruling: Motion to compel denied (work product).

### 1121–1122

Claim–State Farm (same as 1119–1120 with corrections incorporated) dated November 13, 2000 Objection raised: Work Product Ruling: Motion to compel denied (work product).

### 1123–1131

Work Forms–Brandt excavating written by corporate counsel (describing accident and reserves) dated November 13, 2000 Objection raised: Work Product Ruling: Motion to compel granted in part and denied in part. These documents shall be produced with sections entitled "Cause Code," "Reserves" and "Modified Reserves" redacted.

### 1136–1141

Engineering Staff Meeting Minutes dated November 17, 2000 Objection raised: Item 13 has been produced: the remainder is irrelevant, work product and confidential trade secret. Ruling: Motion to compel denied. Other than item 13, the document is irrelevant.

### 1142

letter re: tender of defense to Allianz Insurance Co. dated November 14, 2000 Objection

raised: Work Product/ Attorney Client Ruling: Motion to compel denied (work product).

1156–1159

Memo re: reserves dated November 15, 2000 Objection raised: Work Product Ruling: Motion to compel denied (work product).

1160

e-mail requesting counsel's approval of notice to be sent to dealers dated November 16, 2000 Objection raised: Work Product Ruling: Motion to compel granted (not prepared in anticipation of pending or threatened litigation)

1165–1166

Corporate counsel's handwritten notes re: mediation opportunities ect. dated November 16, 2000 Objection raised: Work Product Ruling: Motion to compel denied (work product).

1180–1206

Engineering Status Report dated November 20, 2000. Objection raised: Certain items have been produced. Defendant claims the remainder is irrelevant, work product, or trade secret. Ruling: Work Product and trade secret objections overruled. Due to the complexity of the document contents and the engineering issues of this case, the court cannot determine that all of the remainder is irrelevant. Motion to compel granted.

1211–1218

letter re: Carlson/Holton (with enclosed accident report and obituaries) from corporate counsel to insurer Objection raised: Work Product Ruling: Page 1211 Motion to compel denied (work product). Pages 1212–1218 (obituaries and motor vehicle accident report) Production already compelled by this order. (see 1073–1076 and 1086–1088).

1247

handwritten notes phone call with Brandt attorney dated November 22, 2000 Objection raised: Work Product Ruling: Motion to compel denied (work product).

1286–89

Jury Verdict Research dated November 29, 2000 Objection raised: Work Product Ruling: Motion to compel denied (work product).

1296–97

Memo to file re: settlement authority dated December 19, 2000 Objection raised: Work Product Ruling: Motion to compel denied (work product).

1298–1321

Engineering Status Report dated December 8, 2000 Objection raised: Certain items have been produced. Defendant claims the remainder is irrelevant, work product, or trade secret. Ruling: Work Product and trade secret objections overruled. Due to the complexity of the document contents and the engineering issues of this case, the court cannot determine that all of the remainder is irrelevant. Motion to compel granted.

1331

handwritten note regarding settlement authority (undated) Objection raised: Work Product Ruling: Motion to compel denied (work product).

1335–36

letter from mediator John Miller to corporate counsel dated January 6, 2001 and letter from David Woodke to plaintiff's counsel dated December 29, 2000. Objection raised: Work Product Ruling: Motion to compel granted.

1345–1354

Work Forms & claim entries written by corporate counsel (describing accident and reserves) dated January 9–10, 2001 Objection raised: Work Product Ruling: Pages 1345 & 1346, 1349–1350: Motion to compel granted in part and denied in part. These documents shall be produced with sections entitled "Cause Code," "Reserves" and "Modified Reserves" redacted. Pages 1347, 1351–1354: Motion to compel denied (work product).

1355–61

fax cover sheet with memo on Nebraska law written by Marlon Polk and dated January 12, 2001 Objection raised: Work Product, Attorney Client Ruling: Motion to compel denied (attorney/client privilege and work product).

**1362–63**

Fax communication between corporate counsel and insurer regarding mediation position and demands dated January 15, 2001 Objection raised: Work Product Ruling: Motion to compel denied (work product).

**1388–1395**

fax with attachments re: Holton demand letter sent to corporate counsel by Gary Nedved dated January 23, 2001 Objection raised: Work Product, Attorney Client, Ruling: Pages 1388–89 Motion to compel denied (work product). Pages 1390–1395 Motion to compel granted.

**1398–99**

fax cover sheet with transmittal confirmation re: legal advice on response to Holton/Carlson demand Objection raised: Work Product, Attorney Client Ruling: Motion to compel denied (attorney/client privilege and work product).

**1400–01**

fax cover sheet with transmittal confirmation re: legal advice on response to Holton/Carlson demand Objection raised: Work Product, Attorney Client Ruling: Motion to compel denied (attorney/client privilege and work product).

**1402–1413**

fax cover sheet with attachments re: summary of claim analysis (Holton) and motor vehicle accident report sent by corporate counsel to insurer dated January 26, 2001 Objection raised: Work Product, Attorney Client Ruling: Motion to compel denied (attorney client privilege and work product).

**1414**

Fax cover sheet re: insurer's response to 1402–1413 Objection raised: Attorney Client privilege Ruling: Motion to compel denied (attorney client privilege).

**1415**

e-mail re: Freightliner file setup Objection raised: Work Product, Attorney Client Ruling: Motion to compel denied. Document irrelevant.

**1416, 1418–20**

letter re: consent to representation-requesting waiver of any conflict-dated January 29, 2001 Objection raised: Attorney Client Ruling: Motion to compel denied (attorney client privilege and document irrelevant).

**1421–26**

retained counsel's letter re: expert economist assistance in Holton dated January 29, 2001 Objection raised: Work Product Ruling: Motion to compel denied (work product).

**1427–46**

Retained counsel's opinion letter re: Holton/Carlson with enclosures dated January 29, 2001 Objection raised: Work Product/Attorney Client Ruling: Motion to compel denied (attorney/client privilege and work product).

**1449–97**

Retained counsel's letter with attached legal research dated January 29, 2001 Objection raised: Work Product, Attorney Client Ruling: Motion to compel denied (attorney/client privilege and work product).

**1498–03**

memo re: Nebraska Accident settlement analysis written by associate general counsel and dated January 29, 2001 Objection raised: Work Product, Attorney Client Ruling: Motion to compel denied (attorney/client privilege and work product).

**1506–08**

Letters: mediation communications between John Miller and the parties dated January 29, 2001 Objection raised: Work Product Ruling: Motion to compel granted.

**1509–26**

January 29, 2001 communications between corporate counsel and Nebraska retained counsel acknowledging receipt of file and enclosing biographical profile of the firm Objection raised: Attorney Client, Work Product Ruling: Motion to compel denied. Documents irrelevant.

**1527**

e-mail re: Wrongful death claim of Missy Holton-counsel communications for evaluating case dated November 30, 2001 Objection raised: Work Product, Attorney Client Rul-

ing: Motion to compel denied (attorney/client privilege and work product).

1528–32

January 30, 2001 communications between corporate and Nebraska retained counsel re: damage evaluation Objection raised: Work Product, Attorney Client Ruling: Motion to compel denied (attorney/client privilege and work product).

1533–35

Fax cover sheet with letter to mediator re: Nebraska accident/mediation Objection raised: Work Product, Attorney Client Ruling: Motion to compel denied (attorney/client privilege and work product).

1536

e-mail communications between corporate counsel and insurer re: Holton/Carlson damages and reserves dated January 31, 2001 Objection raised: Work Product, Attorney Client Ruling: Motion to compel denied (attorney/client privilege and work product).

1537–38

e-mails requesting and receiving advice from counsel on position for mediation in Holton/Carlson dated February 1, 2001 Objection raised: Work Product/ Attorney Client Ruling: Motion to compel denied (attorney/client privilege and work product).

1542–43

Letter/receipt acknowledging that Holton medical bills and records have been forwarded dated February 1, 2001 Objection raised: Work Product/ Attorney Client Ruling: Motion to compel denied. Documents irrelevant.

1564–1570

e-mail re: Holton/Carlson with two attachments re: structured settlements dated February 2, 2001 Objection raised: Work Product Ruling: Motion to compel denied (work product).

1573–76

Letter with documents re: Carlson/Holton between corporate counsel and insurer re: case merits dated February 2, 2001 Objection raised: Work Product/ Attorney Client Rul-

ing: Motion to compel denied (attorney/client privilege and work product).

1596–1603

Communications between corporate and Nebraska retained counsel regarding case evaluation dated February 2, 2001 Objection raised: Work Product/ Attorney Client Ruling: Motion to compel denied (attorney/client privilege and work product).

1637–38

e-mail communications between corporate and Oregon retained counsel regarding case evaluation dated February 4, 2001 Objection raised: Work Product/ Attorney Client Ruling: Motion to compel denied (attorney/client privilege and work product).

1655–57

e-mail re: push rod investigation from corporate counsel dated February 6, 2001 Objection raised: Work Product/ Attorney Client Ruling: Page 1655: Motion to compel denied (attorney/client privilege and work product). Pages 1656–1657: Motion to compel granted (this is a statement of objective facts from company's internal safety investigation).

1658–62

communications between corporate and Oregon retained counsel dated February 6, 2001 (includes e-mail in 1537–38) Objection raised: Work Product/ Attorney Client Ruling: Motion to compel denied (attorney/client privilege and work product).

1663–1664, 1666, 1669–71, 1674–1675, 1679–1680, 1762

e-mails re: Deffenbaugh between corporate counsel and management in preparing for defense dated February 8–12, 2001 Objection raised: Work Product, Attorney Client Ruling: Motion to compel denied (attorney/client privilege and work product).

1665

communications between corporate and Oregon retained counsel dated February 8, 2001 Objection raised: Work Product/ Attorney Client Ruling: Motion to compel denied (attorney/client privilege and work product).

1667

handwritten note documenting phone call between corporate counsel and management dated February 9, 2001 Objection raised: Work Product/ Attorney Client Ruling: Motion to compel denied (attorney/client privilege and work product).

1668

handwritten note documenting phone call between corporate counsel and management dated February 12, 2001 Objection raised: Work Product/ Attorney Client Ruling: Motion to compel denied (attorney/client privilege and work product).

1672–1673

e-mail communications between corporate and Oregon counsel dated February 12, 2001 regarding counsel for trial Objection raised: Work Product/ Attorney Client Ruling: Motion to compel denied (attorney/client privilege, work product, and irrelevant).

1676

Communications between corporate and Nebraska retained counsel regarding Whyrick demand dated February 13, 2001 Objection raised: Work Product/ Attorney Client Ruling: Motion to compel denied (attorney/client privilege and work product).

1681–1725

letter communications between corporate and Oregon retained counsel dated February 14, 2001 re: legal analysis (with attached case law) Objection raised: Work Product, Attorney Client Ruling: Motion to compel denied (attorney/client privilege and work product).

1726

e-mail: FW NTSB Push Rod Investigation dated February 15, 2001 Objection raised: Attorney Client Ruling: Motion to compel denied. The February 14, 2001 Claude Harris e-mail has been disclosed and the remainder of the document is irrelevant.

1728–1731

inter-management e-mails regarding Deffenbaugh push rod replacements dated August 17–21, 2000 (includes 356) Objection raised: Work Product, Attorney Client Ruling: Motion to compel granted.

1733–1740

letter communications between corporate and Oregon retained counsel dated February 15, 2001 with litigation billing policies disclosed Objection raised: Work Product, Attorney Client Ruling: Motion to compel denied (attorney/client privilege, work product, and irrelevant).

1742–1743

e-mail re: Brake Pin Mechanical Properties Objection raised: Work Product, Attorney Client Ruling: Motion to compel granted.

1746–1749

letter communications between corporate and Oregon retained counsel dated February 15, 2001 with litigation billing policies disclosed Objection raised: Work Product, Attorney Client Ruling: Motion to compel denied (attorney/client privilege, work product, and irrelevant).

1750–1757

letter communications between corporate and Oregon retained counsel dated February 16, 2001 re: Carlson legal analysis Objection raised: Work Product, Attorney Client Ruling: Motion to compel denied (attorney/client privilege and work product).

1758–1759

letter communications between corporate and Oregon retained counsel dated February 16, 2001 re: Horton and Carlson legal analysis Objection raised: Work Product, Attorney Client Ruling: Motion to compel denied (attorney/client privilege and work product).

1760

e-mail from Oregon retained counsel dated February 18, 2001 accepting defendant's litigation billing policies. Objection raised: Work Product, Attorney Client Ruling: Motion to compel denied (attorney/client privilege, work product, and irrelevant).

1761

Communications between corporate counsel and insurer forwarding Whyrick demand dated February 19, 2001 Objection raised: Work Product/ Attorney Client Ruling: Motion to compel denied (attorney/client privilege, work product, and irrelevant).

1764–66

Communications between corporate counsel and insurer forwarding Burger King demand dated February 20, 2001 Objection raised: Work Product/ Attorney Client Ruling: Motion to compel denied (attorney/client privilege, work product, and irrelevant).

1773–1774

e-mail communication between corporate management and Oregon retained counsel dated March 6, 2001 regarding discovery Objection raised: Work Product, Attorney Client Ruling: Motion to compel denied (attorney/client privilege and work product).

1778

letter re: Carlson mediation between corporate counsel and the mediator forwarding March 16, 2001 letter from David Houghton-copied to Oregon and Nebraska retained counsel dated March 20, 2001. Objection raised: Work Product, Attorney Client Ruling: Motion to compel denied (attorney/client privilege, work product, and irrelevant).

1781–1788

e-mail re: FL index to documents Objection raised: Work Product, Attorney Client Ruling: Motion to compel denied (attorney/client privilege and work product).

1789–1791

Strategy for litigation by Oregon retained counsel dated April 23, 2001 Objection raised: Work Product, Attorney Client Ruling: Motion to compel denied (attorney/client privilege and work product).

1792–1802

Memo: Product Liability case re: trial authority dated June 11, 2001 Objection raised: Work Product, Trade Secret Ruling: Motion to compel denied (work product).

1806

e-mail re: Freightliner defense arguments dated October 30, 2001 Objection raised: Work Product Ruling: Motion to compel denied (work product).

1807–1813

handwritten notes re: case assessment and evaluation dated November 1, 2001 Objection

raised: Work Product Ruling: Motion to compel denied (work product).

1814–1815

e-mail re: discovery collection in preparation for litigation dated November 2, 2001 Objection raised: Work Product Ruling: Motion to compel denied (work product).

1816–1817

e-mails re: Carlson between corporate and Nebraska counsel dated May 9, 2002 Objection raised: Attorney Client Ruling: Motion to compel denied (attorney/client privilege).

1819

e-mail from Oregon counsel re: filing status dated October 18, 2002 Objection raised: Attorney Client Ruling: Motion to compel denied (attorney/client privilege).

1824

e-mail re: strategy for litigation by Oregon retained counsel dated November 7, 2002 Objection raised: Work Product Ruling: Motion to compel denied (work product).

1825–1826

e-mail re: investigation and strategy for litigation by Oregon retained counsel dated November 13, 2002 Objection raised: Work Product Ruling: Motion to compel denied (work product).

1827

e-mail re: investigation and strategy for litigation by Oregon retained counsel dated November 13, 2002 Objection raised: Work Product Ruling: Motion to compel denied (work product).

1828–1829

e-mail re: investigation and strategy for litigation by Oregon retained counsel dated November 13, 2002 Objection raised: Work Product Ruling: Motion to compel denied (work product).

1830–1833

e-mail re: investigation for litigation by Oregon retained counsel dated November 15, 2002 Objection raised: Work Product Ruling: Motion to compel denied (work product).

1834–1858

Fax cover sheet with attachments re: Carlson; retained counsel and billing policies of defendant's insurer dated November 15, 2002. Objection raised: Work Product, Attorney Client Ruling: Motion to compel denied (attorney/client privilege, work product, and irrelevant).

1859

"Working Copy" of an enclosure letter forwarding file to counsel dated November 19, 2002 Objection raised: Attorney Client Ruling: Motion to compel denied (attorney/client privilege and irrelevant).

1860–69

Letter re: recommendations and trial strategy by Oregon retained counsel dated November 25, 2002 Objection raised: Work Product, Attorney Client Ruling: Motion to compel denied (attorney/client privilege and work product).

1870–71

e-mail re: investigation for litigation by Oregon retained counsel dated December 4, 2002 Objection raised: Work Product, Attorney Client Ruling: Motion to compel denied (attorney/client privilege and work product).

1872–74

e-mail re: legal research and opinion letter by Oregon counsel dated January 13, 2003 Objection raised: Work Product Ruling: Motion to compel denied (work product).

1875–76

letter re: Carlson by Oregon counsel outlining its opinion dated January 28, 2003 Objection raised: Work Product, Attorney Client Ruling: Motion to compel denied (attorney/client privilege and work product).

1877–79, 1903–1904, 1922–1923

letter re: Carlson by Nebraska retained counsel to Oregon counsel regarding legal issues dated February 7, 2003 Objection raised: Work Product, Attorney Client Ruling: Motion to compel denied (attorney/client privilege and work product).

1880–1902

letter re: Carlson by Oregon counsel outlining its opinion (with attached Oregon pleadings) dated February 10, 2003 Objection raised: Work Product, Attorney Client Ruling: 1880–1882: Motion to compel denied (attorney/client privilege and work product). Pages 1883–1902: Motion to compel granted-these documents were filed of record in the Oregon lawsuit.

1905–1921

draft of motion filed in Oregon for determination of choice of law dated February 12, 2003 Objection raised: Work Product Ruling: Motion to compel denied (work product).

1924–1925

letter from plaintiff's Oregon counsel to Freightliner's Oregon counsel dated February 20, 2003 (copied to David Houghton) Objection raised: Work Product Ruling: Motion to compel denied (work product).

1925–1927

letter (and forwarding e-mail) re: Carlson by Oregon counsel regarding legal issues dated February 20, 2003 Objection raised: Work Product Ruling: Motion to compel denied (work product).

1928–29

letter (and forwarding e-mail) re: Carlson by Oregon counsel regarding trial setting dated February 21, 2003 Objection raised: Attorney Client Ruling: Motion to compel denied (attorney/client privilege and irrelevant).

2029–38

memo of law re: Carlson by Oregon counsel dated February 24, 2003 Objection raised: Work Product Ruling: Motion to compel denied (work product).

2039–53

memo of law re: Carlson by Oregon counsel to defendant's insurer, with enclosure, dated February 24, 2003 Objection raised: Work Product, Attorney Client Ruling: Motion to compel denied (attorney/client privilege and work product).

2054–2090

Letter from defendant's Oregon counsel to Nebraska retained counsel, with plaintiff's Oregon filings enclosed, dated February 25, 2003 Objection raised: Work Product Ruling:

2054–2055 Motion to compel denied (work product).

2056–2086 Privilege claims denied, however motion to compel denied because these enclosures were created by the plaintiff and are in plaintiff's possession.

2091–2124

Letter from defendant's Oregon counsel to its insurer, with plaintiff's Oregon filings enclosed, dated February 25, 2003 Objection raised: Work Product, Attorney Client Ruling: 2091–2092 Motion to compel denied (attorney/client privilege and work product). Enclosures were created by the plaintiff and are in plaintiff's possession.

2093–2123 Privilege claims denied, however motion to compel denied because these enclosures were created by the plaintiff and are in plaintiff's possession.

2129–2134

fax cover sheet and draft affidavit of Steve Ahl in support of motion to dismiss Oregon lawsuit for forum non conveniens dated February 26, 2003. Objection raised: Work Product, Attorney Client,

2135–40

letter from Oregon counsel to defendant dated February 27, 2003 Objection raised: Work Product, Attorney Client Ruling: Motion to compel denied (attorney/client privilege and work product).

2148

e-mail between counsel for defendant re: Carlson analysis of legal issues and probability of success dated February 28, 2003 Objection raised: Work Product Ruling: Motion to compel denied (work product).

2155–2163

letter from Oregon retained counsel to defendant's in-house counsel enclosing proposed document discovery responses dated March 4, 2003 Objection raised: Work Product, Attorney Client Ruling: Motion to compel denied (attorney/client privilege and work product).

2184–2190

letter with enclosures re: Carlson from defendant's Oregon retained counsel to defendant and its insurer dated March 6, 2003 and enclosing the February 28, 2003 letter from plaintiff's Oregon counsel demanding a response to production requests. Objection raised: Attorney Client Ruling: Motion to compel denied (attorney/client privilege). Enclosure was created on plaintiff's behalf and is accessible to plaintiff.

2191–2199

fax cover sheet from defendant to its counsel with attachments re: vehicle warranty repair history dated March 5, 2003 Objection raised: Work Product, Attorney Client Ruling: Page 2191 Motion to compel denied (attorney/client privilege and work product). Pages 2192–2199 Motion to compel granted.

2200

fax cover sheet with attached archived vehicle warranty repair history-March 13, 2003 attachment previously disclosed. Objection raised: Work Product, Attorney Client Ruling: Motion to compel denied (attorney/client privilege and work product).

2219–2227

fax cover sheet with attachments communicating to defendant's insurer on Oregon motion to dismiss ruling dated March 13, 2003 Objection raised: Attorney Client Ruling: Motion to compel denied (attorney/client privilege).

2226–2227

fax cover sheet and transmittal confirmation forwarding defendant's proposed order to plaintiff's counsel for review dated March 19, 2003 Objection raised: Attorney Client Ruling: Motion to compel granted. However, plaintiff's counsel should have these documents already.

2230–2231

letter re: bill for counsel services dated March 19, 2003. Objection raised: Work Product Ruling: Motion to compel denied (work product) and irrelevant.

2232–2235

letter re: bill for counsel services dated March 19, 2003. Objection raised: Work

Product, Attorney Client Ruling: Motion to compel denied (work product) and irrelevant.

2236–2238

Opinion letter: defendant's Oregon counsel to defendant, its insurer, and its Nebraska counsel dated March 21, 2003 Objection raised: Work Product, Attorney Client Ruling: Motion to compel denied (attorney/client privilege and work product).

2239

Tape and Document Tracker re: Carlson dated March 14, 2003 Objection raised: Work Product, Attorney Client Ruling: Motion to compel denied (attorney/client privilege and work product) and irrelevant.

2242

e-mail from insurer to defendant re: continued participation by Oregon counsel dated March 25, 2003 Objection raised: Work Product, Attorney Client Ruling: Motion to compel denied (attorney/client privilege and work product).

2243–2244

e-mails re: Carlson between defendant and Oregon retained counsel regarding transferring responsibilities to Nebraska counsel dated March 28, 2003 Objection raised: Work Product, Attorney Client Ruling: Motion to compel denied (attorney/client privilege and work product).